## Commonwealth, et al. v. Graves County Banking & Trust Company.

(Decided June 9, 1914.)

### Appeal from Graves Circuit Court.

1. Guardian and Ward—Settlement of Guardian—When Prima Facie Evidence of Correctness.—A settlement made by a guardian in the county court is only prima facie evidence of its correctness under Section 2038 of the Kentucky Statutes, when each item of credit the guardian is allowed is accompanied by a voucher showing what the credit is for.

2. Guardian and Ward—Settlements in County Court—Suit to Surcharge—Burden of Proof.—In a suit in the circuit court to surcharge settlements made by the guardian in the county court, if the items of credit allowed by the county court to the guardian are accompanied by vouchers showing for what purposes the credits were allowed, the party seeking to surcharge the settlements must specifically point out the items he desires to attack and show that they are incorrect. But if the items of credit are not accompanied by proper vouchers, the burden is on the guardian to show the correctness of these items.

3. Guardian and Ward—Compensation of Guardian.—Where a guardian received $1,400 in money and paid out each year for several years certain sums on claims against the ward, the guardian on each settlement should have been allowed as compensation for the money paid out by it for its ward 5% on the amount for which it received credit in each settlement, and on a final settlement should have been allowed 5% on the amount paid over to its ward.

4. Guardian and Ward—Settlements—Extra Compensation—Vouchers.—When a guardian charges and is allowed by the county court extra compensation for extra services involving personal attention to the ward or care of his estate, the settlement should be accompanied by the proper voucher showing what the charge was for.

W. P. LEE for appellants.

W. J. WEBB, GUS THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The question in this case is the amount of compensation that a guardian is entitled to charge for receiving and paying out the money of his ward.

This suit was brought in the name of the Commonwealth, for the benefit of Harry J. Hendley against the Graves County Banking & Trust Company, for the pur-

pose of surcharging the settlements made by it in the County Court as the guardian of Hendley.

The Trust Company was appointed guardian in May, 1894, and continued to act in this capacity until March, 1909, when it resigned and finally settled its accounts as guardian. There came into its hands as guardian in 1894, 1895, 1896 and 1897 sums of money aggregating, together with the interest it was charged, $1,624.95.

The first settlement of its accounts in the county court was made in December, 1907, and between the time of its appointment as guardian and this date, it had paid out on accounts against its ward, $385.95. In this settlement the guardian was given credit by this amount and also by an allowance for "personal services of $68.25." In addition to this, it was credited by $3.00, court fees, making the total credit $457.20, which deducted from $1,624.95 left a balance in its hands of $1,167.75.

In December, 1899, it made another settlement, in which it was charged with the balance in its hands on the former settlement, and interest thereon, and credited by $94.54, amount paid out on account against its ward, and also by $58.56, allowance for "personal services."

In January, 1902, it made another settlement in which it was charged with the balance in its hands and interest thereon, and credited by $153.55, amount paid out on account of its ward, and in addition thereto by $65.70, compensation for "personal services."

In January, 1904, it made another settlement in which it was charged with the balance in its hands and interest thereon, and credited by $195.65 on account of amounts paid out for its ward, and in addition thereto by $60.65, "allowance to guardian for personal services rendered."

In 1905 it again settled its accounts and was charged with the amounts in its hands and interest thereon, and credited by $114.87, and in addition thereto, $53.40, "allowance to guardian for personal services rendered."

In 1908 it made another settlement in which it was charged with the balance in its hands and interest thereon, and credited by $332.53 paid out on account of its ward, and in addition thereto by $67.47 for "personal services."

In March, 1909, it made a final settlement in which it was charged with the amount in its hands and interest thereon, and credited by $50.36, amounts paid out on ac-

count of its ward, and in addition thereto by $5.24 for
"personal services." This settlement showed a balance
of $613.41 in the hands of the guardian, which sum was
paid to the war

In this suit ⸀he compensation made to the guardian
in each settlement, and which in the aggregate amounted
to $379.27, was attacked as unreasonable and illegal, and
it was sought to recover from the guardian something
over $250 on account of these alleged excessive charges.
The lower court took the view that the compensation al-
lowed was reasonable and, upon the pleadings, which
consisted of the petition and answer, adjudged that the
guardian was entitled to the compensation allowed, and
dismissed the petition.

It will be observed that all of these settlements were
made in the county court and approved by the county
judge in the manner provided in sections 1061-1070 of
the Kentucky Statutes, and it does not appear that any
exceptions were filed to these settlements or any of them
in the county court. With the record in this condition,
there being no evidence either to sustain or refute the
reasonableness or illegality of the allowances, the argu-
ment is made that they must be presumed to be correct,
and, therefore, the circuit court, in the absence of any
evidence to show that they were illegal or unreasonable,
properly dismissed the petition.

It is provided in section 1067, in speaking of settle-
ments made by the county judge, that "Settlements so
made and recorded shall be *prima facie* evidence between
the parties interested;" and also in section 2038 of the
statutes that "The necessary vouchers shall accompany
and remain with the guardian's accounts presented for
settlement, which, when properly made, shall be *prima
facie* evidence in his favor; but it may be surcharged and
falsified by any person interested therein, who did not
contest the settlement."

So that if there is not enough on the face of these set-
tlements to show that the allowances to the guardian
were unauthorized and excessive, these statutory pro-
visions might well be relied on to support the judgment
appealed from. It will be noticed that each settlement
states that the allowance to the guardian was made for
"personal services," but the settlements do not show
what "personal services," if any, aside from the mere
handling of the money, the guardian rendered. If the
guardian performed for its ward any personal services

other than such as related to the control, management and disbursement in the ordinary way of the funds that came into its hands, the record does not disclose them. We must therefore presume that the "personal services" the guardian rendered did not embrace any services except such as were necessary in the ordinary investment of the funds in its hands and the payment in the ordinary way of claims against its ward, because where the guardian is allowed extra compensation for personal services that concern the custody of the ward or involve extra expense or trouble in taking care of his estate, vouchers showing this expense and trouble and what it was for should be filed with the settlement, as contemplated by section 2038, *supra*.

Under the authority of this section, if the guardian had presented vouchers to the county court showing that it rendered for its ward any "personal services" other than such as was involved in the ordinary control, management and disbursement of the funds in its hands, these vouchers, if properly made out and approved by the county judge, would be *prima facie* evidence of the correctness of the allowances and the burden would be on the ward, attacking the allowances as excessive and unreasonable, to point out specifically in what respects they were unreasonable or excessive: Wren v. Wren, 126 Ky., 704. But under the statute a settlement is only *prima facie* evidence of its correctness when it is accompanied by vouchers showing for what purpose each item of credit to the guardian was allowed. When proper vouchers for each item of credit the guardian is allowed do not accompany the settlement, it will not be treated as *prima facie* evidence of its correctness as to the items that are not accompanied by the proper voucher.

Therefore, these several settlements, in so far as the items of "personal services" are concerned, are not *prima facie* evidence of their correctness, and when these items were attacked in this suit to surcharge the county court settlements, the burden was on the guardian to show the correctness of these allowances for "personal services" and not on the ward to show their incorrectness.

Treating the case then as if these several allowances for "personal services" were made as compensation to the guardian for handling in the ordinary way the funds in its hands, the remaining question is, were the allow-

ances reasonable and proper? Section 2036 of the Statute provides: "The guardian, besides all necessary disbursements and repairs, shall be allowed by the court a reasonable compensation for his services." But it does not provide what compensation shall be allowed for any item of services performed by the guardian for the ward.

In this case, however, we are only concerned with what is reasonable compensation to a guardian for merely controlling and managing in the ordinary way money or funds of the ward placed in its hands, and for paying each year out of these funds such expenses of the ward as it is made the duty of the guardian to pay. We might narrow the question further by saying that it concerns compensation for this class of services in a case in which it does not appear that the guardian was put to any extra expense or trouble in securing or managing the fund, or any expense or trouble other than such as was incurred in receiving money or solvent, collectible securities amounting to some $1,400, and paying ordinary claims against the ward.

We have endeavored to state the precise case we have as accurately as possible, because to undertake to lay down any fixed rule of compensation for services rendered merely in the control, management and disbursement of a fund might in some cases do injustice to the ward and in others to the guardian. What would be reasonable compensation for services of this character in one case might not be reasonable in another; and the court, on the facts of each case, should endeavor to fix a reasonable compensation depending upon the circumstances of the particular case. But in no case that has come under our notice has the guardian been allowed exceeding five per cent for such services as these. Tanner v. Skinner, 11 Bush, 120; Hedges v. Hedges, 24 Ky. L. R., 2220; Campbell v. Williams, 3 T. B. Mon., 122; Hughes v. Smith, 2 Dana, 251; Central Trust Co. v. Johnson, 25 Ky. L. R., 55. And 5 per cent we think a reasonable allowance for the guardian in this case. In other words, the guardian, on each settlement, should have been allowed 5 per cent compensation on the money paid out by it on account of its ward and for which it received credit in that settlement and on a final settlement should have been allowed 5 per cent on the amount paid over to its ward.

On a return of the case, if the guardian can show that it was put to extra expense or trouble in caring for its

ward or the estate, the court should allow it reasonable compensation for such services; but if the only services that it rendered related to the mere control and management of the funds of the ward, such as the collection without expense to it of the funds due him, and the payment by it without extra expense of the claim against the ward, it should be allowed the compensation heretofore indicated.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.