## Biggs, etc. v. Commonwealth.

(Decided September 30, 1914.)

### Appeal from Carter Circuit Court.

1. Criminal Law—Continuance.—Under section 189 Criminal Code where a trial is had at the appearance term, and the defendant has shown proper diligence, the Commonwealth will be required to admit as true the evidence of such absent witnesses as shown in the affidavit filed.

2. Homicide—Instructions.—Where two defendants were jointly indicted for murder by stabbing deceased, the defense being that one of them did the cutting to protect the other, who was his brother, an instruction that required the jury to believe the defendant's theory of the case, and that shifted the burden to defendants is manifestly wrong.

CALHOUN B. WILHOIT and G. W. E. WOLFORD for appellants.

JAMES GARNETT, Attorney General, and ROBERT T. CALD-WELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

The appellants, Buck Biggs and Robert Biggs were jointly indicted, each charged with the murder of James Case by stabbing and cutting him, from which he died, and each was charged with aiding and abetting the other in such cutting and killing.

On their joint trial it developed that Case had for several years been a tenant of the two Biggs, who were brothers and owned some considerable tracts of land in Carter County. It appears that Case claimed that he. had rented from Buck Biggs a certain tract of land and that Buck Biggs had refused to carry out the rental contract; but that Case and Robert Biggs were very friendly although Case had fallen out with Buck Biggs because of his alleged failure to carry out the rental contract, and that Case had made certain threats against Buck Biggs.

One morning in April, 1914, Robert Biggs and Case had an appointment to go from their homes, about eight miles distant to Grayson, the county seat, to attend to certain business matters, and on that morning Buck Biggs came to his brother's home and upon being invited by his brother agreed to accompany them, and they all proceeded to go to Grayson together in a wagon.

They remained in Grayson until late in the afternoon, and while there Robert Biggs and Case spent a great portion of their time at a place where they could procure a certain sort of beverage or concoction called "flip"; that the three started home between four and five o'clock, Case and Robert Biggs being more or less intoxicated and Buck Biggs not so much so.

On the way they stopped at a certain store for the purpose of getting something to eat, and while in the store their team which was left outside started off and went towards home. By this time it was dark, and having procured a lantern from some boys they started off to overtake the team. At the store, however, they had met with some man who had whiskey, and they had partaken of that as well as having continued to drink the beverage with which they had supplied themselves at the county seat.

It appears that Case was very much incensed at the refusal of Buck Biggs to carry out his alleged rent contract with him, and while they were proceeding along the road in an effort to overtake their team upon one or more occasions violently upbraided Buck Biggs for his failure to carry out his alleged contract. It appears that while Robert Biggs, who was entirely friendly with Case, was very much intoxicated, yet he endeavored to prevent any trouble between Case and his brother. He advised his brother to admit to Case that he had done wrong, and undertook to persuade Case to wait until tomorrow to settle the matter; and finally told his brother to go on ahead, which he did, and he (Robert) and Case followed, Robert having the lantern borrowed from the boys.

Shortly thereafter Robert and Case were overtaken by three Davis boys, and Case, who knew them, addressed one of them and inquired if he had seen the mule team, and upon being informed that he had not he asked if he had seen Buck Biggs. The Davis boy informed him that he had not, but upon proceeding a short distance further he said, here is Buck Biggs; whereupon Biggs said I am still here, or something to that effect.

It is the theory of the Commonwealth that Robert Biggs and Case became engaged in a fight, and that they both fell to the ground, and that while Case was down that Buck Biggs did the cutting which resulted in his death, and the evidence of the Davis boys tends to con-

firm this theory; but the defendants each testified that Robert Biggs did the cutting in order to protect his brother Buck Biggs from injury or death at the hands of Case, who was a large and powerful man, and who had, as they say, attacked Buck Biggs with a knife.

On the trial both of the defendants were found guilty of manslaughter, and they have appealed.

Several grounds for reversal are urged, but it will be necessary to consider only two of them, viz: Did the court err in refusing at the appearance term a continuance? and, second, was it error in the court to require the defendants to prove, beyond a reasonable doubt, their plea of self defense?

The defendants filed their affidavits showing that certain witnesses, who were residents of Carter County, were at that time absent from the State of Kentucky, but would return and their attendance procured by the next term of the court. One of these witnesses, it was stated, could identify the knife which was found near the body of Case as the property of Case, and would state that he, the witness, had sold or traded this same knife to Case a short time before the difficulty. Another of the absent witnesses, it was stated, would testify, if present, that he had known Case for a number of years, and that he was a violent and dangerous man, and had that reputation in the community where he lived.

The attorney for the Commonwealth consented that the statements of the affidavits as to what the witness would say about the ownership of the knife should be taken as true, and that the affidavit as to the statement of the character witness might be read as a deposition of such witness. But under section 189, Criminal Code, where a trial is had at the appearance term, and the defendant has shown proper diligence the Commonwealth will be required to admit as true the evidence of such absent witnesses as shown in the affidavit filed. This precise question has been passed upon several times by this court, and particularly in the very recent case of Lawson v. Commonwealth, 159 Ky., 457.

Instruction No. 3 given by the court is as follows:

"Although the jury may believe as in instructions No. 1 or No. 2, yet if they further believe from the evidence beyond a reasonable doubt that at the time the defendants or either of them so cut and killed the said James Case

(if they did so cut and kill him) they in good faith believed and had reasonable grounds to believe that they or either of them was then and there in danger of death or great bodily harm at the hands of the deceased, James Case, and there appeared to them or either of them, exercising a reasonable judgment no other safe means of escape or no other safe means to avert the said danger, real or apparent, than to cut, wound, and kill the deceased, then they will find them or the one they believe so acted not guilty on the ground of self defense or apparent necessity."

Under this instruction the jury was required to believe beyond a reasonable doubt that the defendants' theory of the case was true before they could acquit them on the ground of self defense. On that issue it shifted the burden from the Commonwealth to the defendants. The instruction in this particular is so manifestly wrong and so far out of harmony with the whole theory of American Criminal Law as to make a discussion of it superfluous. Arnett v. Commonwealth, 137 Ky., 270.

Upon another trial the court will give separate instructions as to each of the defendants, submitting the issue as to whether he did the cutting and killing to avert a real or apparent danger to his brother.

For the reasons indicated the judgment is reversed, with directions to grant appellants a new trial, and for further proceedings consistent herewith.