## Bell, By et al. v. Bell's Guardian.

(Decided December 17, 1915.)

### Appeal from Mercer Circuit Court.

1. Guardian and Ward—Removal of Guardian—Guardian Ad Litem —Authority to Ask Removal.—In an action by a guardian against his ward for the settlement of his accounts and to recover of the ward's estate certain sums advanced by the guardian in excess of the income, the fidelity and fitness of the guardian are so connected with the subject of the action that the guardian ad litem, appointed to represent the interests of the ward, may, by counter claim, ask the removal of the guardian for neglect or breach of trust.

2. Guardian and Ward—Removal of Guardian—Section 2039, Kentucky Statutes.—Under section 2039 of the Kentucky Statutes, the chancellor has the power to remove a guardian for neglect or breach of trust, where the question is properly raised and the guardian is given an opportunity to defend.

3. Guardian and Ward—Removal of Guardian—Neglect or Breach of Trust—Sufficiency of Evidence.—In an action where the guardian ad litem of an infant ward asked the removal of the guardian for neglect or breach of trust, evidence considered and held sufficient to authorize his removal.

4. Guardian and Ward—Separate Guardianship for Person and Estate.—The ward's person may be entrusted to one guardian and his estate to another.

5. Guardian and Ward—Appointment by Chancellor.—In the absence of a will or other instrument conferring specific power on the

chancellor to appoint a guardian, the chancellor is without authority to appoint.

6. Guardian and Ward—Settlement of Accounts—Method.—Where the guardian rents a farm belonging to his ward and the evidence fails accurately to show the net profit which he realized from the farm, the proper method of adjusting the matter is to charge the guardian with the reasonable rental value of the farm.

7. Guardian and Ward—Finding of Chancellor—Evidence.—In an action by a guardian for the settlement of his accounts, evidence examined and held to sustain the finding of the chancellor as to the rental value of the farm which the guardian occupied.

8. Guardian and Ward—Improvement of Real Estate—Advancements by Guardian—When Allowed.—A guardian has no power to encumber the real estate of his ward, yet where he makes advancements necessary for the improvement and preservation of such estate, and which materially add to its vendible and rental value, such advancements, after suitable provision is made for the education and support of the ward, may be paid out of the surplus income for other years, if the expenditures are such that the chancellor would have approved them if applied to in advance.

9. Guardian and Ward—Settlement of Accounts—Finding of Chancellor.—In an action by a guardian for the settlement of his accounts, evidence considered and held to support the finding of the chancellor.

10. Guardian and Ward—Compensation of Guardian.—In an action for the settlement of a guardian's accounts, evidence considered and held that an allowance for the guardian of 5 per cent. commission on the sums actually paid out by him was proper.

11. Infants—Guardian Ad Litem—Fee For Services—Propriety of Allowance.—In an action by a guardian for the settlement of his accounts, evidence considered and held that an attorney's fee of $1,000 was properly allowed the guardian ad litem for his services in behalf of the infant ward.

12. Guardian and Ward—Counsel for Guardian—Attorneys' Fee—Propriety of Allowance.—In an action by a guardian for the settlement of his accounts, evidence examined and held that an allowance of $1,000 for his attorneys was excessive, in view of the fact that no small part of their services was rendered necessary by the fault of the guardian himself, and was for his personal benefit; and that the allowance should be reduced to $750.

R. W. KEENON and O'REAR & WILLIAMS for appellants.

ROBERT HARDING, E. H. GAITHER and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the cross-appeal and reversing on the original appeal.

William Con Bell, an infant about eighteen years of age, is the owner of a farm in the suburbs of Harrodsburg, consisting of 287 acres, another farm consisting of about 100 acres, near Rose Hill, in Mercer county, and six store rooms on Main street in Harrodsburg, all of which he acquired under the will of his grandfather, William Payne. On September 1st, 1910, his grandfather, W. P. Harvey, was appointed his guardian. The infant's mental and physical condition is such as to require special care and training. With this end in view the guardian placed him in an institution at Lake Geneva, Illinois, where he is maintained at an expense of from $1,400.00 to $1,500.00 per annum. When the guardian took charge of the infant's property he found it in a badly dilapidated condition. Not only were the store rooms in need of repair, but the farm in Harrodsburg had been suffered to run down until the income therefrom was largely depreciated. The guardian built a tobacco barn, restored the fencing, repaired the other buildings thereon, cut the weeds, manured the farm and increased the vendible value thereof from $10.00 to $15.00 per acre. He also repaired the store rooms. On September 1st, 1912, the guardian filed with the judge of the Mercer County Court a settlement covering his guardianship from August 1st, 1910, to September 1st, 1912. According to this settlement, he expended, in the care and education of his ward and in the improvement of the property, about $13,377.16, and received as income $5,237.86, leaving a deficit of $8,139.28. This settlement was approved by the Mercer County Court. On April 21st, 1913, the guardian instituted this suit against his ward, in which he asked for a settlement of his accounts and approval of the expenditures which he had made for and on behalf of his ward's estate, and for judgment against the ward's estate, for the balance due him. By amended petition, he asked for a sale and reinvestment of the farm in Harrodsburg. A guardian *ad litem* was appointed to defend for the infant defendant. During the progress of the action the guardian *ad litem* filed an answer and counter-claim, asking for the removal of the guardian for neglect and breach of trust.

A large number of issues were presented by the pleadings. The case was referred to the master commissioner to hear proof and report a settlement. Each side filed numerous exceptions to the report. On final hearing the

chancellor held that the estate of the ward was indebted to the guardian in the sum of $3,827.82, the amount advanced for the maintenance and education of his ward and the improvement of his property. This sum was directed to be paid to him out of the future income of the estate after first paying the expenses of the estate and ward. W. P. Harvey was retained as guardian of the person of the ward, but removed as guardian of the ward's estate, and the State Bank & Trust Company appointed in his stead. The guardian was allowed 5 per cent. commission on the amounts paid out by him. The guardian *ad litem* was allowed a fee of $1,000.00. E. H. Gaither was allowed an attorney's fee of $300.00 for services rendered in surcharging and contesting the settlement of a former guardian. For their services in this action E. H. Gaither and Robert Harding, attorneys for the guardian, were allowed attorney's fees of $1,000.00. From the judgment so rendered the guardian *ad litem* appeals, and W. P. Harvey prosecutes a cross-appeal.

(1) The first question presented is the propriety of the chancellor's action in removing W. P. Harvey as guardian and appointing the State Bank & Trust Company in his stead. The point is made that as the guardian *ad litem* was appointed solely for the purpose of defending in the particular suit, he had no right to raise the question of the fitness of the guardian, and that the facts themselves are not sufficient to authorize his removal. While it is true that the power of a guardian *ad litem* is strictly limited to matters connected with the suit in which he is appointed, and his acts with respect to the infant's rights concerning any other matters are unauthorized, yet he is a full representative of the rights and interests of the infant for the particular case in which he is appointed, and to that end is clothed with as full and perfect authority for that suit as the general guardian is for all the duties incident to his office. He should look after the interests of the infant and act for him in all matters relating to the suit as the infant might act for himself if he had the capacity to do so. His duty requires him to acquaint himself with the rights, both legal and equitable, of his ward and to take all necessary steps to defend and protect them, and to submit to the court for its consideration and decision every question involving the rights of the infant affected by the suit. 22

Cyc., 661-662. If he is required to take all the necessary steps, both legal and equitable, to defend and protect the rights of the ward, certainly he may file an answer and counter-claim in behalf of the ward. Section 96 of the Civil Code provides:

"A counter-claim is a cause of action in favor of a defendant against a plaintiff, or against him and another, which arises out of the contract, or transactions, stated in the petition as the foundation of the plaintiff's claim, or which is connected with the subject of the action."

Manifestly, where a guardian brings suit for the settlement of his accounts and recovers of the ward's estate sums advanced for his education and support and for the preservation of his estate, and the record itself shows neglect or breach of trust on the part of the guardian, his fidelity and fitness for the position are so "connected with the subject of the action" as to make his removal a proper ground for counter-claim. We think it clear, therefore, that the guardian *ad litem* had the right, by counter-claim, to allege facts showing neglect or breach of trust on the part of the guardian and ask his removal.

Section 2039, Kentucky Statutes, provides:

"The several courts of chancery shall have power to hear and determine all matters between guardian and ward, require settlement of the guardianship accounts, remove a guardian for neglect or breach of trust, control the custody and tuition of the ward and the management and preservation of his estate and direct the sale of any of his real estate, if necessary to the proper maintenance and education of the ward or for the payment of his debts."

Since the chancellor had the power to remove the guardian for neglect or breach of trust, and since the guardian *ad litem* had the right to raise the question, and the question was raised, and the guardian given an opportunity to defend, it follows that the removal was proper, provided the facts were such as to authorize it. The facts are these: The settlement filed by the guardian in the county court showed that the guardian had expended $13.377.16 and had received $5,237.86, leaving a deficit in his favor of $8,139.28. In his original petition in this action, he alleges that there was an error in the county court's settlement of $500.00 and that, as

a matter of fact, the deficit was $8,639.28. For this sum he asked judgment against the estate.. Later on, the guardian filed in this action an amended and corrected settlement of his accounts for the same period of time, which showed that there was a deficit of only $4,690.48, or $3,448.80 less than the deficit shown by his county court settlement, and $3,948.80 less than claimed in his original petition. The difference in the amount grows out of the admitted errors and does not include reduction made by the commissioner. It further appears that many of the errors grew out of duplicate vouchers and inaccurate charges. The record further shows that the only books kept by the guardian were slips of paper torn from the ledger. When asked, to give information regarding particular items, the guardian frequently admitted his lack of knowledge and stated that he entrusted his bookkeeping to a clerk in the bank where he did business. In our search of the record we have not been able to find any instance where the guardian made a mistake against himself. Counsel for the defendant insist that all that the foregoing facts disclose is that the guardian was not an accurate bookkeeper, and that this affords no ground for his removal. They further insist that, although there are errors in the original settlement, they are fully shown by the vouchers which the guardian himself filed with his pleadings and that, therefore, he cannot be accused of any wilful effort to defraud his ward. As we look at the case, something more than mere inaccurate bookkeeping is involved. Even though it be conceded that the mistakes against the ward were not intentionally made, yet, where a guardian procures in the county court a confirmation of a settlement, by which there is shown a balance in his favor of almost $4,000.00 more than he is entitled to, and thereafter seeks to have the settlement approved by the chancellor and to obtain a judgment against the estate of his ward for such sum, we conclude that such conduct is so inconsistent with the obligations which the law imposes on the guardian, and shows such extreme carelessness in the management of the ward's affairs, as to amount to such neglect or breach of trust as will authorize the chancellor to remove a guardian. The removal of appellee as guardian of the infant's estate was, therefore, proper.

The guardian *ad litem* complains of the action of the court in retaining W. P. Harvey as guardian of the person of the ward, and insists that the court was without authority to do this. The evidence does not show any failure on the part of the guardian to take proper care of the ward. On the contrary, it shows that he took particular pains to place him at an institution where his welfare and education would be carefully looked after by persons specially trained for the purpose. As the father and mother of the ward were dead, it was proper for the chancellor to leave the ward in charge of his grandfather, in view of the settled rule that the custody of the ward's person may be entrusted to one guardian and his estate to another. Mason v. Williams, et al., 165 Ky., 331.

Another question presented is whether or not the chancellor had the power to appoint the State Bank & Trust Company as guardian. Under section 2015, Kentucky Statutes, jurisdiction for the appointment of a guardian is conferred on the county courts alone. Nowhere in the statutes is any provision made for the appointment of guardians by the chancellor. We, therefore, conclude that in the absence of a will, or other instrument, conferring specific power on the chancellor to appoint a guardian, the chancellor is without authority to appoint.

(2) The guardian claims that, being unable to get a better offer for the farm in Harrodsburg, he, upon the advice of the county court, rented the farm to himself at $1,200.00 a year. Considerable evidence was heard on the question of the rental value of the farm. The commissioner and chancellor fixed the rental value at $1,400.00. The guardian claims that this is too much, while the guardian *ad litem* insists that the guardian should be charged with the profit which he made on the farm for the three years he had it in charge, or, at any rate, he should be charged with a much higher rental than that fixed by the judgment of the court. While there is some proof to the effect that the income derived by the guardian from the farm was in excess of the rental value fixed by the court, yet this does not take into consideration the cost of operation and the additional compensation which the guardian would be entitled to if he managed instead of rented the farm. In view of the uncertain amount of profit, and of the further fact that

the guardian actually rented the farm, we think the proper method of settling the matter is to charge the guardian with the reasonable rental value thereof. Taylor v. Taylor, 14 Ky. Law Rep., 379. As is usually the case, the witnesses differ as to the rental value. Many of them say the farm is worth $1,200.00 a year, while others fix its rental value at from $6.00 to $7.00 per acre. While it may be true that for the first year, when the farm was dilapidated, its rental value did not exceed $1,200.00, we think that for the two subsequent years it did exceed that amount. On the whole, therefore, we see no reason to disturb the finding of the commissioner and chancellor fixing its rental value at $1,400.00 a year.

(3) Another contention of the guardian *ad litem* is that the court erred in adjudging the guardian a recovery for the sums advanced in improving the property. That these improvements were necessary for the preservation of the property and materially increased both its vendible and rental value, there can be no question. While it is true that a guardian has no power to encumber the real estate of his ward, yet where he makes advancements necessary for the improvement and preservation of the estate, and which add very much to its vendible and rental value, such advancements, after suitable provision is made for the education and support of the ward, may be paid out of the surplus income for other years, if the expenditures are such that the chancellor would have approved them if applied to in advance. Fidelity Trust Company v. Rudtloff, 28 Ky. Law Rep., 152.

(4) It would extend this opinion to too great a length should we consider in detail the various items which the guardian *ad litem* claims should have been charged to the guardian, and the equally numerous items with which the guardian insists he should have been credited. After carefully considering them, we see no reason to disturb the finding of the chancellor, but conclude that the judgment does substantial justice between the parties.

(5) Complaint is also made of the allowance of compensation to the guardian. He was allowed a commission of 5 per cent. only on the amounts paid out by him. No allowance was made for extra services. As the sum allowed was reasonable and the record fails to disclose any ground for refusing the guardian compensa-

tion, we conclude that the allowance was proper. Commonwealth v. Graves County Banking & Trust Company, 159 Ky., 455, 167 S. W., 411.

(6) The next question involved is the amount of the fee allowed the guardian *ad litem*. The fee was fixed at $1,000.00. The guardian *ad litem* insists that this is too small, while the guardian contends that it is excessive. It appears that the suit was pending for about eighteen months. Depositions were taken in Danville, Louisville, Harrodsburg and Lake Geneva. The record is a large one. Several hundred vouchers had to be examined and checked separately. It cannot be doubted that because of the efforts of the guardian *ad litem* in looking after the interests of the ward, the sum of at least $5,000.00 was saved for the estate, and the ward will receive a much larger rent than if the farm had been left in the hands of the former guardian. Under the circumstances, we conclude that his services were reasonably worth the sum fixed by the chancellor and we see no reason either to increase or decrease the allowance.

(7) The fee of $300.00 allowed E. H. Gaither for his services in surcharging the settlement of the former guardian does not appear unreasonable, and was, therefore, properly allowed. The fee of $1,000.00 allowed Messrs. Gaither and Harding for their services in this action is too high. While it is true that the original suit was brought, not only for a settlement of the guardian's accounts, but for the sale and reinvestment of the Harrodsburg farm, yet no small part of their services was rendered necessary by the fault of the guardian himself and was for his personal benefit. Under the circumstances, we conclude that the allowance should be reduced to $750.00. Goddard v. Goddard, 164 Ky., 41.

On the cross-appeal the judgment is affirmed. On the original appeal the judgment is reversed for proceedings consistent with this opinion.