44

# Biggs v. Commonwealth.

April 18, 1950.

Rehearing denied June 6, 1950

R. C. Littleton, Judge.

Thomas D. Theobald, Jr., for appellant.

A. E. Funk, Attorney General, H. D. Reed, Jr., Assistant Attorney General, and Lynn B. Wells, Commonwealth's Attorney, for appellee.

JUDGE HELM—Affirming.

Appellant, R. E. (Bob) Biggs, charged with the crime of malicious cutting and wounding, was found guilty and his punishment fixed at 12 years imprisonment. He appeals, assigning as errors: (1) The court erred in overruling appellant's motion for a continuance; (2) the court erred in admission and rejection of evidence; (3) the court erred in failing to give the whole law of the case, and (4) the verdict was rendered under the influence of passion and prejudice, was excessive, and not sustained by either the law or the evidence.

Summarizing the testimony for the Commonwealth: Jarvey Roark, the prosecuting witness, 44 years of age, married, farms, drives a truck and hauls for General Refractories Company. He has lived in Carter County about all his life. He has known the appellant since he can remember. On Saturday morning, June 4, 1949, Roark and his wife were in Grayson, standing in front of Botts' drug store. Appellant owed him some money for coal. Roark met Biggs there on the street and asked if he had left the money at the bank for him; Biggs told him he had not received his check yet; that Arthur Gee, the cashier of the bank, was gone; that he "would sure get it next week. Roark told Biggs "all right" and turned to leave; when he turned, Biggs stabbed him "overhanded" in the left side of his neck. Asked if before he was stabbed he noticed any movement on the part of Biggs, he said, "Whenever I asked him about the money he worked his hand kindly and I said 'You ain't got a knife, have you?' and he said, 'No, I ain't.' And held out his hand." He was "awful sick," and went to the hospital. He was in the hospital at Grayson for eight days. He had not been discharged by the doctor at the time of the trial on August 29, 1949. On cross-examination he stated he was 5 feet, 11 inches tall; Biggs' hand came over his shoulder when he stabbed him; he had not threatened to "beat hell out of Biggs;" he did not say to him "you s—— of a b—— you are going to pay me." He had been to the bank and found that Biggs had not left any money for him. Biggs was to leave it at the bank with Arthur Gee on May 15. This was the first time since May 15 that he had seen Biggs in Grayson when the bank was open. Biggs had employed him to "haul his tobacco off." He had on occasion furnished work for Biggs' tenants. He had never had any trouble with him.

Dixie Roark, wife of Jarvey, was present when her husband was stabbed by Biggs with a pocket knife. Biggs came down the street and stopped at the curb. Her husband walked over and asked him if he had "ever got" his money. Biggs told him, ",Arthur is not in. He is the one I do business with." Jarvey said, "That is all right, Bob," and turned away. When he turned Biggs stabbed him. She screamed and ran between them and was pushing Jarvey backwards. Biggs made two or three steps toward Roark. She held on to her husband until they got in front of the bank. He was "bleeding terrible," blood running down to his belt.

. Tracy Hall saw Biggs with a knife in his hand in front of the drug store; saw him "come around and hit Jarvey in the neck with it" at a time when Jarvey had his back to Biggs. Hall did not hear any conversation between them. Mrs. Eloise Crawford, Harry Clark, Clay Taylor, James MacMillan, and Ora Everman corroborated these witnesses. About three weeks before the stabbing Kenneth Williams heard Biggs telling about a "renter" of his working for Jarvey. He said, "If he (Jarvey) don't stay away from here and leave the people alone I will kill him."

Dr. J. W. Stovall examined Roark at his hospital in Grayson on June 4, 1949. He found he "had a stab in the left side here and running straight right there (pointing to left side of neck) missed this jugular vein and cut that nerve and those muscles in two. I took some deep stitches and some other stitches on the outside. * * *sewed him deep to stop the bleeding and took after that some skin sutures." Asked as to the effect this will have upon Roark, he said, "There will be a permanent stiffness of this neck. Paralysis of this nerve from it being cut in two."

For appellant, Biggs, it is shown that he is 81 years of age. On the day testified about by the Commonwealth's witnesses, he went to Baker's store and bought some dry goods; went on to the grocery store above the drug store. He was standing near the curb when "Jarvey said, 'Bob, did you fix my money today?' And I never said a word. So he said, 'By G——, did you hear me? I want to know if you fixed my money.' I said, 'Now, Jarvey, you were over the other day to hire one of the men, why didn't you ask then?' 'You are a damn

liar, you don't aim to pay me.' And walked to me and said, 'Have you got your knife?' And I said, 'No sir, I ain't got my knife.' Roark said, 'You damn black nigger s—— of a b——, you don't aim to pay.' And I said, 'Now Jarvey.' And he put his hand back on his hip or in his pocket and he said, 'You will pay it.' And I cut him. I had an old knife there, it wasn't nothing to open so I cut him. * * * Little old short black-handle knife. * * * about 2½ or 3 inches, probably 2½ inches. I didn't want to cut him but I seen I couldn't get away from him. * * * And soon as I struck him I quit." He did not tell Kenneth Williams that he was going to kill Jarvey. He owed Roark some money. Asked if people were standing around at the time, he said, "When Jarvey spoke to me I was excited and never noticed for nobody." He had the knife in his pants' pocket. He did not have the knife at the trial; someone had thrown the knife in a well. Jarvey had hired some of his tenants to work for him. He didn't cut Jarvey a second time, "When I struck him in the neck and seen it was bleeding, I quit." He and Jarvey were friends; he didn't know he was in town until he saw him in front of the drug store.

In rebuttal Roark testified that he did not curse appellant or call him a "black nigger s—— of a b——," or put his hand on his hip pocket as if reaching for a knife or a gun; he did not make any move toward Biggs as if to strike or do anything to him; he did not tell Huff Kiser that he was going to "beat hell" out of Biggs. Witnesses who stated they were acquainted with the general moral reputation of appellant, said it was bad. The court admonished the jury as to the effect of this evidence.

Appellant filed motion, supported by affidavit, requesting a continuance on the ground that he had not had time to prepare his case; that he had not employed an attorney until three weeks before the trial; that Huff Kiser, who was not present, would testify that Roark had threatened to "beat hell" out of Biggs; that Lawrence Gillum, who was not present, would testify that appellant "acted only in self-defense in cutting Jarvey Roark." The indictment was returned on August 22, 1949. The trial was had on August 29, nearly three months after the cutting and wounding, and seven days after the indictment was returned. Appellant was on

bail during all of this time. The record discloses that he owns some seven or eight hundred acres of land; that a close relative is cashier of the Commercial Bank of Grayson, and that a nephew is County Judge of Carter County. From the record it appears that appellant made frequent trips to Grayson between June 4 and August 29, 1949; was fairly active for a man of his age. Under proper admonition of the court the affidavit as to what Kiser and Gillum would testify was read to the jury.

Our attention is called to the cases of Biggs v. Commonwealth, 159 Ky. 836, 169 S. W. 525; Biggs v. Commonwealth, 164 Ky. 223, 175 S. W. 379, Ann. Cas. 1916A, 1096; and Biggs v. Commonwealth, 196 Ky. 655, 245 S. W. 292, which would suggest that appellant is not unacquainted with the trial of cases such as this. Appellant was represented by experienced counsel. The refusal of a motion for a continuance is a matter within the sound discretion of the trial court. Criminal Code of Practice, sections 188 and 189. We are not able to say that the trial court abused this discretion.

Appellant says that the evidence of the witnesses as to his general moral reputation "was not confined to the time of the trial or within years prior thereto." We find that the questions as to his general moral reputation are in the present tense, except for the testimony of Walter Stamper on cross-examination. But the record discloses no objection to or motion to exclude this evidence. We do not find any evidence in the record to which appellant objected which is substantially prejudicial to him.

Appellant in his brief says: "The instructions given by the court, so far as applicable, comply with the law, except, perhaps, the court erred in not giving a concrete instruction on appellant's defense that if the prosecuting witness attacked him he had a right to use such force, whether real or apparent, as appeared necessary to prevent the assault." We have examined the self-defense instruction given by the court and find that, except for the crime charged, it follows the self-defense instruction set out in section 891, Stanley's Instructions to Juries. We have approved the form of this instruction in numerous cases.

Appellant says the verdict was rendered under the

influence of passion and prejudice, is excessive, and is not sustained by the evidence. The verdict is substantial, but the injuries inflicted upon the prosecuting witness were serious, and might easily have been more serious. The evidence was highly conflicting. According to the testimony for the Commonwealth, the cutting and wounding was inexcusable. Both appellant and the prosecuting witness have lived in Carter County many years and are well known. The jury saw and heard the witnesses. They were the judges of the weight and credibility of the evidence. The verdict of the jury was for the Commonwealth. No reversible error has been called to our attention.

The judgment is affirmed.