## Bishop v. Bishop.

(Decided May 5, 1931.)

WALLACE MUIR, WADE LAIL and HANSON PETERSON for appellant.

RAYMOND CONNELL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Some years ago the appellant and appellee were married and lived together until the early part of the year 1924. As a result of this union two children were born, a son, Armstrong, Jr., and a daughter, Beverly.

In January, 1924, appellant instituted a divorce action against appellee in the Harrison circuit court, in which he charged her with improper conduct and with infidelity. The appellee by way of answer and cross-petition set up grounds and asked for a divorce from appellant and also for alimony and the custody of their children. Thereafter the parties entered into a contract which provided that the petition and cross-petition be dismissed and that appellee should on or about January 15, 1925, institute an action for divorce against appellant on the ground of abandonment and prosecute same diligently to a final judgment, and that, upon her failure to file the action and prosecute it as provided, appellant

might file action for divorce on the same ground and prosecute it to final judgment. One item of the contract contained the following provision:

"It is agreed that for the present, and that the final judgment rendered in the divorce granted hereinbefore referred to, the care, custody and control of the two infant children, Armstrong Bishop and Beverly Bishop, shall be awarded to their father, W. A. Bishop, and that the said Tee Louise Bishop shall make no objection, should the said W. A. Bishop keep the children at the home of his father, R. V. Bishop."

Agreeable to the terms of the contract, appellee did institute her suit for divorce against appellant, and this was prosecuted to a final judgment granting her a divorce, awarding the custody and control of the two children to appellant, but providing that appellee might see them at specified times.

At the September term of the Harrison circuit court, appellee, pursuant to a notice which had been served on appellant, filed a motion to redocket the divorce proceeding and to award to her the care, custody, and control of the two infant children, and in support of the motion filed her affidavit to which reference will be made later.

Appellant made a motion to require appellee to file a petition, and, his motion being overruled, he interposed a demurrer to the affidavit of appellee, which was also overruled by the court. He then filed a response to the motion and affidavit. The motion to redocket the cause was sustained, and proof was heard upon the motion to change and modify the judgment with respect to the care, custody, and control of the children.

The response is in three paragraphs. The second paragraph relates to the suit of appellant against the appellee for divorce on the grounds of improper conduct and infidelity and other matters involving the alleged improper conduct of appellee prior to the date on which the judgment for divorce was entered, and further alleges that appellee is a nonresident of the state, residing in Ohio, and, if given the custody of the children, will remove them from the state and beyond the jurisdiction of the Harrison circuit court and put it beyond the power of the courts of Kentucky to enforce future orders with reference to the custody or control of the

children. On motion of appellee, this paragraph was stricken from the response.

The issues on the motion were completed by a reply to appellant's response. On final hearing it was adjudged that the two children be taken from the custody of appellant and awarded to the care, custody, and control of appellee, and it was further adjudged that appellant pay to appellee $40 per month in bi-monthly payments to aid in the support and maintenance of the children; such payments to begin on the 10th day of March, 1930, and to continue until further orders of the court. Appellant is here on appeal from that order and judgment of the court.

On behalf of appellant it is insisted that the proceedings to modify the former judgment of the court should have been initiated by filing a verified petition rather than by motion suported by affidavit, but that, if it might be done by motion and affidavit, same should state facts sufficient to support a cause of action. Section 2123, Ky. Statutes, relating to the power of courts to make orders relative to the care, custody, and maintenance of children in divorce cases provides that, upon the petition of either parent, the court may revise or alter any such judgment or order. This court seems not to have regarded this provision with reference to the procedure as mandatory, and has recognized the established practice of proceeding by motion for a change of judgment where the cause is on the docket or by motion to redocket and for a modification as to the custody of the children in the event the cause has been stricken from the docket. Such motion is treated as a petition within the meaning of the statute. Middleton v. Middleton, 218 Ky. 398, 291 S. W. 359; Hays v. Hays, 219 Ky. 284, 292 S. W. 773.

On the question as to the sufficiency of the affidavit, it may be said that, while the statute is silent as to the requirements of the petition, it may be assumed that the petition should state some facts which, if true, would authorize a court of equity to modify a judgment with respect to the custody of children. The affidavit does not charge that appellant is an unfit person to have custody of these children, but it does set forth such circumstances and changes in conditions as might warrant the court in modifying its former judgment.

It is asserted and vigorously argued by counsel for appellant that the contract between the parties to which

reference has been made is binding upon appellee, and that by its provisions she waived all rights to thereafter ask for the care or custody of her children, and that the court is bound to recognize the contract so long as it is to the best interest of the children.

Courts generally recognize the right of parents to contract as between themselves or even with third parties with reference to the custody of their children, but equity will not be deprived of its jurisdiction in this respect by any contract or agreement that is subversive of the welfare and best interests of minor children.

There is another aspect of this case that may well demand serious consideration. This contract does not deal alone with the custody of these children, but on its face appears to be a collusive agreement that one party will sue for divorce with at least a tacit understanding that the other party will not resist the suit, but, on the contrary, will promote the efforts of the one asking relief at hands of the court.

"A husband and wife cannot enter into a lawful agreement for divorce, and courts unhesitatingly declare illegal as contrary to public policy any contract intended to facilitate or promote the procurement of a divorce. . . . A contract between a man and wife as to the support of their child, however, is not void as against public policy because it is entered into pending divorce proceedings between them, where neither its purpose nor effect in any way facilitates the granting of the divorce. Though there is authority to the contrary, the better view seems to be that the public interest demands disclosure of the true cause of divorce, so that where a spouse has a good ground his or her agreement to conceal it and allege another is against public policy." 9 R. C. L. 254, 255.

In appellee's reply, the legality of this contract was called in question, but the allegation as to its illegality was withdrawn. Whatever may have been the purpose of counsel in withdrawing the challenge as to the legality of this contract, it does not operate to deprive the court of its power to determine that question.

But, aside from any question as to the legality of the contract, the status of these children with regard to their custody was fixed by the former judgment of the

circuit court. And courts of equity by virtue of section 2123, Ky. Statutes, as well as by original jurisdiction, are invested with the power to make orders and judgments determining the custody of children and to revise and modify same, when the interest and welfare of children dictate such action. This power grows out of a recognition of the fact that courts may not in a judgment anticipate the future with its varying conditions nor guard against unfavorable environment or circumstances that may arise out of changed conditions. Equity will retain control of its judgments, fixing the custody of children, and will not hesitate to change or modify when the exigencies of the situation demand such action as a safeguard to the happiness and welfare of the children.

In the recent case of Gribben v. Gribben, 227 Ky. 96, 11 S. W. (2d) 998, 999, it is said:

"Where there has been an agreement between parents respecting a division of time to be spent by their child, if consonant with his best interests, it should be given serious consideration, but it is not binding on the chancellor, nor upon this court."

And in Workman v. Workman, 191 Ky. 124, 229 S. W. 379, 380, this court said:

"No consideration short of a statutory inhibition will interfere with the power of a chancellor to adjudge the custody of an infant to whomsoever it might appear the welfare and happiness of the infant demand, whether that person be a resident or nonresident."

These infant children were not parties to the suit between their parents nor to the contract made prior to the institution of the suit for divorce and neither the judgment or contract is binding upon them when it is made to appear to a chancellor that their well-being demands a change or modification of previous orders of the court. Middleton v. Middleton, supra.

The evidence in this case is that, following the separation and divorce, appellee moved to Covington and secured employment in a merchantile establishment in Cincinnati; that she worked during the day and attended school at night, taking a course in art. After completing her course, she had charge of the art department in the establishment where she was employed and later moved to Cincinnati, where she established a business of her

own. In this business venture she has met with success, and the business is now on a paying basis.

The depositions of a number of appellee's friends and acquaintances in Covington and Cincinnati were taken. By these witnesses, it is shown that since her residence in those cities her associations and surroundings have been good, and there is no evidence indicating that she has been guilty of any questionable conduct, and there is no evidence indicating that she is not now a proper person to have the custody and control of her children or that she is unfitted in any way to properly direct their training and education. She has always manifested toward her children a motherly love and devotion, and has at no time failed to visit them when permitted to under the terms of the judgment or agreement. She has expended her own funds to purchase apparel, gifts, and articles to contribute to their comfort and happiness.

Appellee testified that she is now in a position to provide these children with a home where they may attend first-class local schools; that she will be able to conduct her business and yet give proper care and attention to the children.

It further appears from the evidence that, after these children were placed in the custody of their father, they made their home with appellant's mother, who was a woman of refinement and culture and in good circumstances financially, but later, on account of the failing health of their grandmother, which finally resulted in her death, they were placed in a boarding house. During the time they were in this boarding house, the father was away much of the time. A part of the time he was in Nashville in school preparing for a prospective position with a newspaper. He was later employed in Chicago. While in Nashville he was unable to contribute anything to the maintenance of his children, so his mother assumed the burden of caring for them. While in Chicago he sent funds regularly to pay for their board and maintenance. When testifying, he produced and filed in evidence canceled checks and money order receipts aggregating over $1,000 which he had expended for the support of his children. He testified that he had expended other sums for them for which he had no receipts.

The evidence indicates that he has at all times to the extent of his ability provided for the comfort and happiness of his children, and there is nothing to indicate that he is morally unfit to have the custody and control of them. Evidence further shows that appellant has remarried, and that since his remarriage the children have lived with him and with their stepmother in the home owned and occupied by his mother at the time of her death.

There is a sharp conflict in the evidence as to which of these parties is better suited to have the custody and control of these children. A number of witnesses testify that it is better for the children to be with their own mother rather than with a stepmother. There is, however, evidence that their stepmother is very kind and considerate in her dealings with these children, in fact, the children themselves testify that she is very kind to them, but both of them state that they would prefer to be with their own mother, and there is evidence that the son has always manifested a desire to be with her.

In the case of Colson v. Colson, 153 Ky. 68, 154 S. W. 380, 381, this court had for consideration a case where both divorced parties had remarried and were in a contest over the custody of a child. The opinion in part said:

"Here we have a case of a mother and step-father on the one side, and a father and stepmother on the other. Neither prospect is altogether inviting for the child. The mother may generally be trusted to protect the interests of her own child, even against improper conduct of her husband. On the other hand, the father may be often prejudiced by the statements of the stepmother, and, not being at home all the time, he cannot see that the child will always receive proper treatment. When, therefore, the mother is not shown to be unfit for the purpose and the child herself prefers to remain with the mother, we think it better that the mother should have the custody of her own daughter, rather than the father who was married again, although the father may be in a position to afford the child more comforts and advantages than the mother."

The chancellor saw and heard the witnesses in this case with the exception of the few whose evidence was taken by deposition, and he was therefore in better posi-

tion to give just and proper weight to the evidence than is this court from a reading of the record, and, as there is ample evidence to sustain his finding, it will not be disturbed.

The evidence shows that appellant is employed by a motor company in Cynthiana, and is receiving a salary of $45 per week, and that he has an undivided interest in the old family home and furnishings, but the value of his holdings therein does not appear. Aside from this there is little or no evidence as to his financial ability to contribute to the support of his children. The court's judgment in this respect, however, is not final, and may at any time be changed or modified upon proper motion and showing by either party.

Judgment affirmed.