## Harkey v. Haddox et al.

(Decided June 3, 1932.)

W. MIKE OLIVER for appellant.

BRADSHAW, MACDONALD & McMURRAY; EATON & BOYD; W. F. McMURRY, JR.; and M. P. WALLACE for appellees.

JOHN P. CUSICK, warning order attorney.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

In November, 1925, T. C. Haddox and T. E. Haddox, doing business as a firm in the name of T. C. Haddox & Co., were running a store at La Center in Ballard county. On November 4, 1925, Dr. C. E. Harkey, by his attorney, filed an action in the McCracken circuit court to recover on a note for $4,000 against T. C. Haddox & Co., and took out an attachment on the ground that they had no property, subject to execution, sufficient to pay the debt, and the claim would be endangered by the delay arising before judgment and return of no property found. The summons was served on T. E. Haddox in McCracken county. An attachment was issued which was directed to the sheriff of McCracken county or any constable of Ballard county. The plaintiff's attorney took the attachment to a constable in Ballard county, who went to the

store, delivered a copy of the attachment to T. E. Haddox and his wife, saying that he had levied on the store and left it in charge of Mrs. Haddox. He gave the attachment with his return indorsed thereon to the attorney who had brought it to him. When the petition was filed in McCracken county, no entry of the filing was made upon the file book. On the cash book in the office there was an entry of 50 cents paid as tax, but at this place there was this entry: "Left off docket by request of attorney for plaintiff." The petition was not in the files of the office, and the attachment was not returned to the office. In this condition of things, and in ignorance that any suit had been filed, the City National Bank, on November 10, brought a suit against T. C. Haddox & Co., to recover on notes aggregating $6,249.84, and took out an attachment on the same ground as set out in the Harkey suit. On the same day the Mechanics' Trust & Savings Bank brought a like action to recover $798.86, and took out a like attachment. On the same day the First National Bank brought a like action to recover $1,189.15, and took out a like attachment. In these three actions the attachments were directed to the sheriff of Ballard county and sent to him.

On November 17 the Citizens' Savings Bank brought a like action to recover $2,000, and on the same day the Clark-Lack Grocer Company brought a like action to recover $2,479.61, and in these actions similar attachments were taken out and sent to the sheriff of Ballard county. The sheriff found the store open and T. E. Haddox running it as usual. He had no notice of any prior attachment. He levied the five attachments on the store; locked up the store and kept the keys. On November 17 in the five actions in which the sheriff had made the levy, a motion was made for a receiver to take charge of the property. This motion was sustained on November 21, and the five actions were, by an order of the court, consolidated. The receiver took charge of the property and proceeded to sell the goods; none of the plaintiffs in the consolidated actions having any notice of the prior action filed by Dr. C. E. Harkey.

On March 10, 1926, the Carson Pirie Scott & Co., an Illinois corporation, filed an action in the McCracken circuit court against Haddox & Co. and all of the plaintiffs in the above attachment cases, alleging large debts against Haddox & Co., and that they were insolvent, and,

with the design to prefer one or more of their creditors to others, had suffered, procured, and caused to be procured each of the above attachments to be issued, with a view to prefer such attaching creditors to its other creditors, and they prayed that the attachment in favor of the defendant, Dr. Harkey, be adjudged an assignment and transfer of all of the properties of Haddox & Co. for the equal benefit of all their creditors. A motion was made to consolidate this action with the other actions, but no formal order is in the record sustaining the motion. Proof was taken. Dr. C. E. Harkey was the only creditor who resisted the petition. On final hearing the circuit court entered judgment in favor of the plaintiffs in the last-mentioned suit, and adjudged an equal distribution of funds in the hands of the receiver among all the creditors. Dr. Harkey appeals.

While there is no order consolidating the cases, the judgment of the court is headed thus: "Judgment consolidated cases," and the last paragraph of it adjudges the relief above indicated in the "action of Carson Pirie Scott & Co. v. T. C. Haddox, et al." The record as a whole clearly shows that the actions were treated by the court and the parties as consolidated, and the omission to enter an order consolidating the actions affected no substantial right of appellant.

Dr. Harkey lived in St. Paul, Minn. He was a son-in-law of T. E. Haddox; T. C. Haddox was a son of T. E. Haddox, and had been in Flordia for some months before the transactions above referred to took place. Appellees proved declarations by T. E. Haddox to the effect that he had caused the attachment taken out in the name of Dr. Harkey on November 4, for the purpose of securing for Dr. Harkey a preference; that they contemplated going into bankruptcy, as they did some months later, and the intent was not to file a petition in bankruptcy for four months, so that the attachment would not be affected by the bankruptcy. Haddox denied making these statements, and the competency of the testimony is assailed because it was given by an attorney who represented Haddox in the bankruptcy case. But a fact may be proved by circumstances no less than by the declarations of the parties, and it is not necessary for the court to pass on the competency of the attorneys' testimony if the fact is otherwise established; for his subsequent declarations are competent only against him.

In cases of this sort, the court gives some weight to the judgment of the chancellor on the facts, and does not disturb his judgment when left in doubt by the evidence as to the truth. What the parties intend may be shown by their conduct, and often this is the best evidence of what they intended. The proof here is clear that the firm of T. C. Haddox & Co. had been in very bad financial condition for some months. The statute providing that all attachment liens acquired within four months before an adjudication in bankruptcy should be dissolved thereby had been in force for many years, and was well known among business men. The stock of goods which they had when sold by the commissioner brought net something over $6,000, and this, so far as appears, was all the assets of the firm. They owned in November, 1925, as shown by the record, three or four times this amount, and no reason is shown why the firm did not go into bankruptcy in November, 1925, when the attachment suits were brought. It is shown that they did go into bankruptcy later and after four months from November 4, although the precise date is not shown. No reason is shown for the delay in filing the petition in bankruptcy after they well knew they were bankrupt. The first attachment suit was brought by the son-in-law. T. E. Haddox not only knew when this suit was filed, but the constable, acting under the direction of the attorney who brought the suit, came and made a levy upon the property and left it in charge of T. E. Haddox's wife, suffering them to go on with the business just as they had before, and put up no notice to show that the property had been levied on. The attachment was not returned to the clerk's office and put in the record. The clerk was directed not to docket the case, and no part of the record could be found at the clerk's office. There was evident purpose here to acquire a lien on the property in the name of the son-in-law and to keep this lien secret. The condition of the firm at the time was such that as reasonable men they must have contemplated bankruptcy. To go into bankruptcy then would have discharged the lien the son-in-law had obtained by his attachment. The bankruptcy followed later, but too late to disturb the son-in-law's attachment. The conduct of Haddox when the attachment was levied and afterwards is in keeping with the purpose to secure for his son-in-law a first lien on the property, and he at least acquiesced in all that was done in the lawsuit to keep the thing

secret. Under the rule that a man is held to intend by his act what a reasonable person would intend under such circumstances, the court cannot escape the conclusion that the taking out of this attachment and the managing of the case as it was managed was but a device by the parties to secure a preference for the son-in-law when the firm went into bankruptcy. The judgment of the circuit court so holding cannot be disturbed under the facts and circumstances shown by the record. It is so unusual for the plaintiff in an attachment suit to direct the clerk not to place the case on the docket and to take the petition from the files and leave nothing to show what had been done that the court may conclude that the son-in-law and his father-in-law were acting in concert when the son-in-law left the father-in-law in possession carrying on the store as before, with nothing in evidence to show a levy of the attachment.

While the action filed by Dr. Harkey was not consolidated with the other actions, he was made a defendant to the action filed by Carson Pirie Scott & Co., and appeared and presented his whole case in that action. The failure to consolidate this case with the other actions affected in no wise any substantial right of his.

On the whole case the court finds no error in the proceedings prejudicial to the substantial rights of appellant. Equality is equity, and the judgment of the chancellor on the facts cannot be disturbed.

Judgment affirmed.