## Thompson v. Dulaney et al.

(Decided Oct. 23, 1934.)

HOGG & MOORE for appellant.
D. I. DAY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Samuel Wright, a resident of Letcher county, died in February, 1928, survived by a son, E. F. Wright, two daughters, Ella B. Fleming and Mary Dulaney, and a grandson, V. M. Thompson, son of Rosie Thompson, daughter of decedent who died many years prior to his death.

Subsequent to the death of Rosie Thompson and before her son attained his majority, Mr. Wright conveyed portions of his lands in Letcher county to his son and two daughters. While these deeds recited a cash consideration which they were required to pay, there is evidence that the grantor gave to each of the grantees $250 either in cash or by way of reduction in the price of the land so conveyed to them. In May, 1923, or 1924, Mr. Wright signed and acknowledged a deed to V. M. Thompson for a tract of land on Marshall branch in Letcher county containing approximately 65 acres for a recited consideration of $500. On February 17, 1927, he conveyed this same tract of land jointly to H. D. Dulaney, husband of Mary Dulaney, and V. M. Thompson for a recited consideration of $1 and the further consideration that the Dulaneys should keep and care for grantor while an invalid. This deed was delivered to H. D. Dulaney who caused it to be recorded.

On September 29, 1930, V. M. Thompson instituted this action in equity against H. D. Dulaney and Mary Dulaney, and, by an amended petition, made the other heirs at law of Samuel Wright, together with their husbands and wives, parties to the action, alleging in substance that on May 18, 1924, Samuel Wright, whose wife had previously died, executed and delivered to him a general warranty deed for the tract of land to which reference has been made and which was fully described in the petition; that he never put the deed to record, but shortly after receiving same from grantor, delivered it to his aunt, Mary Dulaney, for preservation and safekeeping; that he made repeated demands and requests that she return the deed, but was informed by her and her husband that the deed had been destroyed; that he had not sold, transferred, or in any way parted with his title to the land and that by reason of the conveyance he is the legal owner and entitled to possession thereof; that since February 17, 1927, H. D. Dulaney and his wife, Mary Dulaney, have wrongfully and unlawfully and without his consent held possession of the land; that the rents and profits therefrom during such period is of the value of $200 per annum. He asked that the master commissioner of the court be directed to execute to him a deed for the land described in the petition in lieu of the deed made to him by Samuel Wright which had been destroyed and for judgment against H. D. Dulaney and

Mary Dulaney for $200 per annum for withholding the land and for the rents and profit thereon.

H. D. Dulaney and Mary Dulaney filed answer and cross-petition in the first paragraph of which they traversed the allegations of the petition. In a second paragraph they alleged in substance that if Samuel Wright executed a deed to plaintiff for the land described in his petition, it was never delivered to him and the reason it was not delivered was because of the failure of plaintiff to pay the consideration mentioned therein and that by reason of the nondelivery of the deed, if it in fact was executed, it became a nullity and passed no title to plaintiff. In the third paragraph they set up the deed of February 17, 1927, whereby Samuel Wright conveyed the land jointly to H. D. Dulaney and V. M. Thompson and alleged that they had fully paid and performed the consideration mentioned therein and that H. D. Dulaney thereby became the owner of an undivided one-half interest in the tract of land; that at the time of the execution and delivery of the deed, grantor placed them in possession of the land and they owned one-half thereof and held one-half for V. M. Thompson.

They made their answer a cross-petition and alleged that the tract of land in controversy was susceptible of division without materially impairing its value or the value of the interest of either of the joint owners and asked that they be adjudged owners of a one-half undivided interest in the land and for partition thereof as provided by law. The issues were completed by a reply traversing the affirmative allegations of the answer and cross-petition.

On the issues thus made, proof was taken, and on final hearing plaintiff's petition was dismissed and defendants, H. D. Dulaney and Mary Dulaney, were granted the relief sought by the cross-petition, and plaintiff is appealing.

Commissioners were appointed and proceeded to divide and allot the land in controversy as directed by the judgment and their report has been filed and confirmed and a deed has been made to H. D. Dulaney for the portion allotted him.

At the outset of the brief filed by counsel for appellant, it is said that the only question for decision is whether or not Samuel Wright executed and delivered the deed to V. M. Thompson for the land in controversy.

But, since it is admitted by appellees that the deed was executed, the only question to be determined is whether it was delivered.

Appellant testified that his grandfather executed the deed to him and left it at the home of appellees expecting him to come down and get it within a day or two; that within a week or so thereafter he went to the home of his aunt and one of appellees turned the deed over to him; that he asked his aunt to keep the deed for him until he had an opportunity to go to Whitesburg to have it recorded. He assigned as the reason for leaving the deed with his aunt that he was staying at a boarding house and they thought it best for her to keep it for him. When asked on cross-examination how he knew the deed was executed, he stated that on the return of his grandfather from West Virginia the latter asked him if he had received the deed. When asked whether the deed was delivered to him, he replied, "After I had got the deed from my aunt I was down there one day and he said he would like to give me the deed and talk with me about the place; so he called for the deed and we read it over, he and I, and he told me that he wanted me to have that part of the land." He further testified that he paid the consideration recited in the deed; that at different times he gave money to his grandfather and to the Dulaneys for him; that Samuel Wright listed the land and that he and appellant paid the taxes; that he gave Mr. Dulaney the money to pay the taxes. Nothing was paid by check and no receipts taken for the amounts paid.

Mrs. Dulaney testified that she always told appellant he should have his part in the land, and appellant wanted Mr. Wright to make a deed to him for the tract in controversy, saying Mr. Wright would never want for anything if he would do so; that she begged her father to make the deed and when it was made the grantor wanted to retain a lien upon the land to secure payment of the recited consideration, but she asked him to make a "clear" deed and put a lien note against it. Concerning the delivery of the deed to her, she stated:

"My father gave the deed to me and told me to take it and take care of it until he seen what the boy done, and said 'I have made it against my will.' "

She put the deed in her trunk and when appellant

came he asked if the deed had been made and she either gave it to him or he got it and kept it for a while and then returned it to her. Her father was not present when appellant got the deed. She further testified that she kept the deed in her trunk for some time but finally her father took charge of it, and that at different times when appellant would be at her home, her father would tell her to lock the trunk and give him the key as he was afraid appellant would slip the deed out; that she never delivered the deed to appellant and her father never instructed her to do so. Mrs. Dulaney was corroborated in many of these details by her husband.

Mr. and Mrs. Dulaney testified that Mr. Wright lived in their home a part of the time in 1925 and continuously thereafter until his death; that they cared for him and provided for his wants; that appellant did not give or pay him any money nor did he pay them anything for him. Mrs. Dulaney testified, however, that appellant gave her father $25 with which he took a trip to West Virginia but that this was before the deed was executed. Appellee testified that Mr. Wright insisted on deeding them one-half of the land in controversy in consideration of their caring for him; that he did finally make the deed which was referred to and filed with their answer and cross-petition, but before doing so, he called for the deed he had made appellant and burned it, stating that appellant had never complied with the conditions of the deed and the one-half interest would amount to $250, the same as he had given his son and daughters.

There is evidence that others sought to buy this tract of land from Mr. Wright, but he stated to them that he had conveyed it to appellant. There is also evidence that after the deed was made to appellant, appellees recognized and considered that he was the owner of the land. However, in the circumstances, the fact that Mr. Wright refused to convey the land to others and stated that he had conveyed it to appellant and the Dulaneys' recognition of the latter's ownership is not inconsistent with appellees' theory that the deed was never delivered. Appellant testified that he told Mr. Dulaney to go ahead and use the land and that he furnished some money to pay taxes on it, but there is no evidence that he ever exercised any other act of ownership. Mr. Dulaney denied that appellant had ever furnished any money to pay taxes and testified that after

the joint deed was executed he listed the land with other land owned by him and paid the taxes thereon.

As supporting their contention that the evidence is sufficient to show delivery, appellant cites and relies on Hood v. Nichol, 236 Ky. 779, 34 S. W. (2d) 429, 436, and Brandenburg v. Botner, 221 Ky. 7, 297 S. W. 702, and a number of other cases. But we find it to be a general rule, running through these and other authorities examined, that, as stated in Justice v. Peters, 168 Ky. 583, 182 S. W. 611, 613:

"The delivery may be actual, or it may be a constructive delivery; but, in either state of case, the intent of the grantor to transfer the title to the grantee is essential and necessary to constitute a delivery. This intention to transfer the title must, however, be accompanied with some act of the grantor, by which he parts with power and control over the deed for the benefit of the grantee, for intention alone will not constitute a delivery."

And in Hood v. Nichol, supra, it is said:

"But, in order for title to the property covered by the deed to pass, delivery must mean, not only the transfer of the manual possession of the deed, but also an accompanying intention of passing the title."

In Paige on Contracts, sec. 579, it is said in effect that delivery has two distinct elements: (1) That the party delivering must surrender control of the instrument and the other party must take actual or constructive possession of it, and (2) that the surrender of the control upon the part of the party delivering the instrument must be accompanied by an intention upon the part of both of the parties that it shall take effect thereby and that a mere change of custody without such intention does not amount to delivery.

Notwithstanding evidence to the contrary, there is ample evidence to sustain a finding that there was neither actual nor constructive delivery of the deed nor that there was even an intention upon the part of Mr. Wright that it would become effective until the consideration was fully paid. There is likewise evidence to sustain a finding that the consideration was not paid.

While a chancellor's finding as to the weight and effect to be given evidence is not binding upon the appellate court, this court has consistently refused to disturb such finding when it is amply supported by the evi-

dence, or when the evidence is conflicting and upon a consideration of the whole record the mind is left in doubt as to the correctness of the chancellor's conclusions. Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657; Williams v. Little, 234 Ky. 440, 28 S. W. (2d) 504; Tapp v. Baskin, 246 Ky. 438, 55 S. W. (2d) 29; Harkey v. Haddox, 244 Ky. 380, 50 S. W. (2d) 955.

Judgment affirmed.