## Taylor v. Trosper.

(Decided Nov. 4, 1938.)

E. N. INGRAM for appellant.

W. T. DAVIS for appellee.

Opinion of the Court by Judge Fulton—Affirming.

The appellant and appellee were married September 6, 1920, and to this union was born a son, James S. Trosper, Jr., on November 16, 1921. They lived together in Hazard until September, 1933, at which time the appellant left appellee's home for reasons which do not appear in the record and they have remained separated since that day.

On January 4, 1935, appellee filed suit for divorce in the Bell circuit court and in this action an agreement was filed settling the property rights of the parties, by which the appellee paid appellant $300 alimony and agreed to pay her for the support of said child, then 13 years of age, $50 per month until he reached the age of 16 years, which monthly sums have been paid. The boy is now past 16. One provision of this agreement was as follows: "It is agreed that their said child may visit with either one of them for a reasonable length of time, but the home of said child is to be with its mother, Mrs. Pearl Trosper."

On March 12, 1935, judgment was rendered in the action, granting appellee, James S. Trosper, a divorce from the appellant, but the above provision with reference to the custody of the child was not made a part of the judgment.

Shortly after this divorce decree, the appellee, James S. Trosper, married a young lady who worked in his office. The mother, Pearl Trosper, having custody of the boy, continued to reside with him in Pineville for something like a year after the divorce and later married one Walter Taylor and she and the boy now reside with Taylor at Path Fork in Harlan county near the line between Harlan and Bell counties.

· On August 13, 1935, appellee filed in the Bell circuit court notice and motion, supported by affidavit, to redocket the aforesaid divorce action and for a modification of the judgment therein and asking that he be adjudged the care, custody and control of said child.

Depositions were taken and judgment rendered on this motion at the April term 1937 of the Bell circuit court by which judgment the chancellor adjudged that the father was better prepared to furnish the child wholesome surroundings, influences, better training and educational advantages than the mother and that, taking into consideration the welfare of the boy, the father should be given his custody and control, but that the mother should have the boy with her for a period ranging from one to two weeks at a time at such reasonable intervals as would not interfere with the health, welfare and education of said child. From the judgment of the chancellor awarding custody of the child to the father, appellant prosecutes this appeal.

The evidence, in which there is not a great deal of conflict, shows that the appellee resides in Hazard, which contains exceptional educational advantages for the boy; that he holds a responsible position with the Columbus Mining Company; has charge of certain mines and offices of the company and looks after its litigation in the adjustment of personal injury and compensation claims and has been receiving a salary of $250 per month for some eight or ten years; that he is a member of a rather prominent family of the county and is active in civic affairs, a member of a number of clubs, chairman of the church board of his church and has always been active in these civic and religious organizations.

Appellee's present wife is also of a prominent family and she possesses a high school education, business training and is a stenographer employed at a salary of $110 per month, and she is also a regular church attendant.

Appellee owns practically no real estate, only a lot or so in Hazard and has approximately $1,500 saved up.

As above stated, the appellant remarried and her present husband, with whom she now lives, was in September, 1934, in the Harlan circuit court, convicted of

voluntary manslaughter for the killing of his then wife and sentenced to 21 years in the penitentiary, but was pardoned shortly thereafter. Appellant was a witness for him on that trial. Appellant, together with her present husband and the boy, reside in rather a remote section of Harlan county near a mining camp, and the boy attends school, but the educational facilities are, of course, not equal to those in Hazard, and apparently there is no church and it seems that no member of this family is an attendant at church.

Appellee testifies that in June, 1936, he took the boy with him on a three weeks' trip to points in the East, including Washington, Annapolis and Virginia Beach; that when the boy arrived at his home to make this trip he was very poorly clad and that he had to write for more clothes to take with him on this vacation and that he had to buy extra clothes sufficient to make this trip; that on this trip he learned that the boy had developed the habit of drinking beer and wanted it every day; that on a few occasions, in order to satisfy the boy, he drank beer with him. He testifies that the boy's conduct and expressions indicated that his surroundings and associates were having a bad effect on him and that he delighted in boasting about his stepfather and his prison record and his aptness to get into fights; that he apparently regarded his stepfather as very much of a hero.

Orville Goins, a boy of 14 years of age, testified that he visited in the home of appellant for two or three weeks in the summer of 1936, and that Walter Taylor, Jimmie's step-father, drank considerable beer and that he and Jimmie drank about a bottle a day. He further testified that there was some drinking about the store which Walter Taylor owns and that Walter Taylor usually took a pistol with him when he went anywhere and that on occasions he had heard Taylor use profane language in the presence of his wife and step-son.

Appellant testifies that she is the owner of 200 or 300 acres of land in Knox county which she expects some day to be very valuable for mining purposes, but has not produced any income since she owned it; that her husband, Walter Taylor, owns a country store, which she runs, and also owns two small homes.

She testified that when she lived with appellee as his wife there was much drinking in the home; that appellee kept whiskey in the home by the barrel and that

they had numerous parties at which there was much drinking; that she herself drank to some extent and that appellant also drank. She states that the boy is a regular attendant at school and that his surroundings are good. She states that her present husband does not drink whiskey at all; that he drank beer for a while but that he does not even do that any more. She admits that she drinks beer with Jimmie occasionally, but states that the boy's father formerly drank with him, too.

Jimmie Trosper testified and states that he prefers to live with his mother. He says he is fond of his stepfather and that they get along like they were brothers; that his step-father gives him beer to drink frequently; that his step-father does not drink whiskey and get drunk.

The boy testified that while he and his father and mother lived together in Hazard his father kept whiskey and that he had on a few occasions seen people drinking in the home and had also seen his mother drink whiskey a few times. He stated that he did not see any drinking at parties given at the former home.

Appellant stresses most earnestly the fact that at the time the judgment of divorce between her and appelee was rendered the appellee was willing to submit the care and custody of the child to her; insists that he did so in order to procure the divorce and that in view of this provision of the contract, and also in view of the fact that the boy, himself, has expressed a desire to remain in her custody, the chancellor should not have taken the custody of the boy from her and given it to the father. This contention is logical and carries some weight but we do not feel it conclusive of the matter and of sufficient weight in itself to control the decision.

The courts, almost with unanimity, in cases of this character, give paramount consideration to the welfare and best interest of children in determining who shall have custody of them. Gribben v. Gribben, 227 Ky. 96, 11 S. W. (2d) 998; Harmon v. Harmon, 264 Ky. 315, 94 S. W. (2d) 670. In the case of Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657, the court concisely states this principle as follows [page 658]:

"Courts generally recognize the right of parents to contract as between themselves or even with third

parties with reference to the custody of their children, but equity will not be deprived of its jurisdiction in this respect by any contract or agreement that is subversive of the welfare and best interests of minor children.''

A careful reading of the evidence in this case, which we have attempted to state as fairly as we can, consonant with brevity, leaves the mind of the court somewhat in doubt, though we are inclined to consider the chancellor's finding as the proper one; and, in such state of case, it is plainly our duty to adopt the usual and well-settled practice of affirming the chancellor's decisions when this court is in doubt.

Wherefore, the judgment is affirmed.