## Cook's Adm'r v. The Bank Josephine.

Dec. 14, 1945.

194

Clark Pratt for appellant.

Joseph D. Harkins and Joe Hobson for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Mrs. Enon Cook sued The Bank Josephine (here-

inafter referred to as the Bank) to obtain a balance of $2000 she claimed to have on deposit. The Bank defended on the ground that it had paid such balance to Nebraska Martin, the daughter and agent of Mrs. Cook. A jury trial resulted in a verdict in favor of the Bank and from the judgment entered thereon Mrs. Cook's administrator appeals, she having died and the action was revived.

A reversal is asked because the court erred; 1, in admitting incompetent evidence; 2, in giving the Bank the closing argument; 3, in refusing to direct a verdict in favor of appellant; 4, in improperly instructing the jury; 5, in not setting aside the verdict as being flagrantly against the evidence.

Mrs. Cook made three deposits in the Bank from November 1940 to November 1943, the first two being for $1500 each and the last for $1000. She gave two checks in 1941 of $500 each, which with the small service charges reduced her balance to $2,999.94. Mrs. Cook was 76 years old, quite feeble and practically blind, so she went to Mr. Jo Davidson, the assistant cashier of the Bank, and made arrangements with him to pay checks signed by her daughter, Mrs. Nebraska Martin, or her son, Mr. William A. Cook, both of whom were mature persons. Mr. A. L. Davidson, an employee of the Bank who worked right next to Mr. Jo Davidson, testified that he heard the conversation between Mrs. Cook and him which he detailed thus:

"She said in substance—this was her daughter, and that she wasn't well and couldn't come down very often and she wanted him to meet her; that she might have to send her to the Bank and if she did and she come in there for him to let her have anything she wanted."

Subsequent to her first visit to the Bank, Mrs. Cook had her son, William, write and sign a check on June 23, 1943, in favor of her daughter, Mrs. Martin, for $999.94. Mrs. Martin presented the check at Mr. Jo Davidson's window in the Bank and he required her to endorse it and he testified she asked him, "if that would leave mother's account even;" whereupon, he went back and asked the bookkeeper the amount of Mrs. Cook's balance. When informed it was $2,999.94, and thinking the check was for $2,994.94, he paid that sum to Mrs. Martin in

packages of $500 composed of $50 bills except, of course, the $499.94 was not contained in a package of $50 bills; that he counted out the money to her and she accepted it.

Mrs. Martin's version of the cashing of the check differs from that of the assistant cashier. She testified he handed back the check for her endorsement, went back in the bank and upon returning to his window, paid her one bundle of bills containing $500 and another bundle of smaller bills making up the $499, and there was 94 cents in change. She asked him if this left her mother's account an even $2,000, to which he replied, "Yes." She further testified that she counted the money at the window when he handed it out to her and that it was $999.94; that she took this sum to her mother who loaned her $500 and that Mrs. Cook retained the $499.94.

Jo Davidson testified that when he balanced his cash at the usual time that day, which was an hour or an hour and a half after this transaction, he found that he was $2005 short; that this was the only large transaction he handled on that day and he realized that he had paid Mrs. Martin $2000 too much on this check and he immediately wrote Mrs. Cook of his mistake; that he inserted the figure "2" in front of "999.94" and the word "twenty" in front of the words "nine hundred;" that he did not look for the other $5 as it was not unusual to be out of balance such a small sum, which customarily straightened itself out in the next day's business.

The incompetent evidence complained of relates to a house Mrs. Martin was on a deal to purchase for two or three weeks from Mrs. Mousie Turner, which she finally consummated on December 7, 1943, by paying Mrs. Turner $1000 in $50 bills. This evidence was relevant. When there is a question of whether or not a person has done an act, any fact which supplies a motive, or constitutes a preparation for the act or any subsequent conduct having a direct bearing on the act, may be proven. Jones on Evidence Civil Cases, 4th Ed. Section 138; Harkey v. Haddox, 244 Ky. 380, 50 S. W. 2d 955; Sperry Flour Co. v. De Moss, 141 Or. 440, 18 P. 2d 242, 90 A. L. R. 406. Besides, this evidence could not have been prejudicial, since Mrs. Martin produced substantial testimony showing that her mother advanced this $1000 to her the very day she closed the deal for the

house and that the money came from some government bonds Mrs. Cook cashed that day.

At the outset of the trial the Bank moved the court to award it the burden of proof, to which Mrs. Cook objected. Since the Bank's answer pleaded payment, the court erroneously overruled its motion. Civil Code of Practice, sections 317 (6), and 526; Business Mens Assurance Co. of America v. Eades, 290 Ky. 553, 162 S. W. 2d 920. It was the Bank's duty to move at the beginning of the trial for the burden of proof, otherwise it would have been waived. Adams v. State Highway Commission, 285 Ky. 38, 146 S. W. 2d 7. The fact that the court made an error in not granting the Bank the burden of proof at the outset of the trial did not prevent a correction thereof after the evidence was all in and it was time to argue the case. McCalla v. American Freehold Land Mortgage Co., 90 Ga. 113, 15 S. E. 687. Had the court not corrected this error and allowed Mrs. Cook the concluding argument, it would have committed reversible error in the event she received a verdict. 64 C. J., section 69, p. 71; Moss v. Mittell, 253 Ky. 504, 69 S. W. 2d 1046.

The only theory upon which appellant may insist upon a directed verdict is that the Bank was only authorized by her to cash checks signed by Mrs. Martin, or William Cook and that it had no authority to deliver money to Mrs. Martin from appellant's account except in conformity with the demand contained in her written check, and that Mrs. Martin was not acting within the scope of her authority as the agent of her mother in receiving more money from the Bank than the sum for which the check was written. But the law does not support appellant's theory. In Pierson v. Union Bank & Tr. Co., 181 Ky. 749, 205 S. W. 906, 2 A. L. R. 172, it was said that if a person deposited money with the direction to the banker to let her son have it, then she could not recover from the bank if it turned over the deposit to the son and he misappropriated it. Many cases are cited in the annotation following the Pierson opinion in 2 A. L. R. 175 to the effect that a verbal instruction to a cashier for the application of a deposit is sufficient, although it is customary to do so by check since a check furnishes satisfactory evidence of the authority.

The Bank produced substantial evidence that Mrs. Cook instructed its assistant cashier that her daughter was her agent and to let her have what she wanted of this deposit. According to its evidence, when Mrs. Martin presented this check she inquired if it would square her mother's account. Thereupon, the cashier paid her $2,999.94 on a check calling for $999.94 and when Mrs. Martin accepted $2000 more than the check called for, it was the same as if the Bank had paid this $2000 to Mrs. Cook. There can be no doubt that Mrs. Martin was acting within the scope of her authority as her mother's agent in accepting all the money the Bank delivered to her, since she testified she took the entire amount (which she claimed was only $999.94) home and delivered it to her mother, who loaned her $500. American Nat. Red Cross v. Brandeis Machinery & Supply Co., 286 Ky. 665, 151 S. W. 2d 445, 451.

The instant case is clearly distinguishable from Brooks v. Gray-Von Allmen Sanitary Milk Co., 211 Ky. 462, 277 S. W. 816, 46 A. L. R. 1207. There, the agent or servant perpetrated a fraud for his own personal benefit without the master's, or principal's, knowledge or consent and retained the proceeds of his fraudulent acts and did not account therefor to his principal. The opinion said that to hold a principal for his agent's torts, they must have been committed within the scope of the agent's employment and in the furtherance of his principal's business; but if he steps aside from his principal's business for ever so short a time and commits an act not connected therewith, then he is not acting within the course of his employment and his principal is not liable for his wrongful acts.

The instructions in simple and concise language told the jury to find for appellant in the sum of $2000, unless they believed from the evidence that Mrs. Cook verbally authorized the Bank to pay funds in her account to Mrs. Martin and that pursuant thereto it did pay her the $2000 in question, in which event they would find for the Bank. The instructions given do not differ materially from those offered by appellant and are correct under the facts shown in the record.

From the facts set out herein, it is evident that there was presented a question for the jury's determination. Merely because the evidence is conflicting, it can-

not be said that the verdict is not supported by the evidence. The evidence here is such that it would have amply supported a verdict for either party and in such state of case it cannot be said the verdict is flagrantly against the evidence.

The judgment is affirmed.