## Rose v. Ledford et al.

February 20, 1948.

R. Monroe Fields, Judge.

J. E. Childers for appellant.

Proctor Damron for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is one of those unwelcome cases involving the right to the custody of an infant child as between the father and its maternal grandparents. The facts are that appellant, Cecil Rose, some year or more before December 23, 1939, married the daughter of the two appellees. On the date referred to their daughter gave birth to a son and named him Roger Wayne Rose. She died 12 days thereafter. On her deathbed, and in the presence of her mother and father, the appellees, she requested that they take custody of the child and rear him, to which the husband (appellant) consented and which he admits. He accompanied the appellees when they carried the child to their home, and he remained an occupant of that home for some ten months or more, when he joined the Merchant Marine and was engaged in such war service for some three or four years. He contributed to the upkeep of the child in the sum of $25

per month until he married a second wife and located thereafter in Wise County, Virginia, close to the Kentucky line, but he ceased such payments after his second marriage.

The appellees lived in a rural section of Pike County on a farm they then owned and also at the time of the filing of this suit and at the time of the trial. It is located in a neighborhood accessible to a graded school and others of a lower grade. The child at the time of the filing of this action was a student in the second grade. He appears from this record to be quite intelligent and made rapid progress in his studies. The members of the appellees' family consists of themselves and two minor children, 12 and 14 years of age, with whom the child constantly associated and has become very much attached to, as well as to his grandparents, referring to his grandmother as "mother." The child's grandfather formerly taught in the public schools for 21 years and is now 61 years of age, whilst his wife is only 50, and each is vigorous and in good health.

Since the return of appellant from his service in the war the child has seen but very little of him, and the proof shows that when he was informed of his father's efforts to regain his custody he wept and protested against his being taken away from appellees' home, and it goes without saying that they are greatly attached to him.

The second wife of appellant was before her marriage to him a divorcee, but she had no children, and it appears from the record that she is not capable of ever bearing any, but for what reason the record does not disclose. She is a teacher of the seventh grade at a school nearby her home in Virginia, and appellant is an electrician, a trade which he learned during the war. Appellee, Coyen Ledford, is now an employee of a coal company near his home with light duties to perform and from which he earns $250 per month, as well as the profit from the operation of his farm. So it appears that the financial prospects of the infant to obtain the necessities of life and sufficient financial ability to properly rear him is possessed by both appellant and appellees, though the combined income of appellant and his wife may be some larger than that of the appellees.

The litigants admit that the relationship between them has been pleasant and agreeable and the record reveals no antagonism since the delivery of the child to its grandparents. Moreover, while appellant remained in the home of the appellees, following the death of his first wife, he repeated to them that he desired them to rear his child and which he admitted when he first suggested to them that he desired the child's custody after marrying the second time, but then said that he nevertheless desired to have the child returned to him in his newly acquired Virginia home.

Section 405.020, KRS, says:

"The father and mother shall have the joint custody, nurture and education of their minor children. If either of the parent dies, the survivor, if suited to the trust, shall have the custody, nurture and education of the minor children. The father shall be primarily liable for the nurture and education of his minor children."

In construing that statute we have held in numerous cases that a surviving parent who voluntarily, freely and uninfluenced agrees to and does consign the custody of his infant child to another who is capable of performing the duties to correctly rear him and which transaction he continues to reaffirm and acquiesce in, he thereby becomes deprived of the superior right given to him by the statute. The latest case of this court so holding under almost, if not quite, parallel facts is Vetter v. Goff, 306 Ky. 505, 208 S. W. 2d 514. Other prior cases to the same effect, and cited in that opinion, are: Thompson v. Childers, 231 Ky. 179, 21 S. W. 2d 247; Fraze v. Grundy, 300 Ky. 613, 189 S. W. 2d 265; Staggs v. Sparks, 286 Ky. 398, 150 S. W. 2d 690; Taylor v. Trosper, 275 Ky. 259, 121 S. W. 2d 41; Bishop v. Bishop, 238 Ky. 702, 38 S. W. 2d 657.

The case of Bridges v. Matthews, 276 Ky. 59, 122 S. W. 2d 1021, 1023, involves facts which we regard as exactly parallel to those in this case, except that the child there involved was 12 years of age instead of 7 or 8, as in this case. In that case the judgment of the Barren circuit court giving the custody, under the facts developed, to the grandparents was affirmed, and in the course of our opinion we said:

"In Thompson v. Childers, 231 Ky. 179, 21 S. W. 2d 247, a contract whereby a father surrendered the custody of his children to others was upheld, and, in the opinion, it was said that once having surrendered possession of children voluntarily and freely a parent may not take them away from those to whom he surrendered them without first showing that it would be for the best interest of the children to do so. The evidence in this case shows that the child, now 12½ years of age, has a good home in a good community, and that those with whom he has lived nearly all of his life are devoted to him and willingly performing for his welfare all that could be desired. He is a bright, intelligent boy, and happily situated. He has reached the age where it would be difficult for him to adjust himself to new surroundings completely at variance with those with which he has been familiar. He expressed a strong desire to remain with his grandmother, and, under the circumstances of this case, his desire should be given great weight. In Cummins v. Bird, 230 Ky. 296, 19 S. W. 2d 959, this court adjudged that the maternal grandfather was entitled to the custody of a 12 year old child as against the father, and the desire of the child was the decisive factor in the case."

After quoting from the case of Cummins v. Bird, to the same effect, we continued:

"If sympathy for appellant in his natural desire to have the companionship and care of his son would control, the prayer of his petition would be granted, but a still more sacred consideration must direct our judgment. The controlling consideration is the welfare of the child. Here the child has been separated from his father since early infancy, and obviously has transferred his interests and affections to his present home and those who compose the family of which he is now a member. Undoubtedly, it would be a serious injury to him to sever the ties that now bind him to his surroundings and those whom he loves."

As we have stated, the facts in that (Bridges) case cannot be distinguished from those in this case, and the opinion therein—fortified by our prior cases cited therein—leaves no room for doubting the correctness of the judgment appealed from.

It will be found by consulting our numerous cases involving the same question here presented, that each case should be and is determined upon its own particular facts. That determination, whatever it may be, is followed by grief and distress of the losing litigant, but the law has no remedy by which that result may be appeased. The only course to be followed by courts in such cases is to weigh the primary and superior right of the parent, as qualified by his agreement to surrender the custody of an infant child, as against the welfare of the latter in receiving the proper rearing and opportunities for becoming a worthy and useful citizen. A retarding of the happiness of the child as a result of a change in custody and home associates, plus the severing of ripened family ties might defeat that desired result.

We therefore conclude that the court properly determined the issue, and the judgment is affirmed.