Marian O. HIGGASON, Appellant,

v.

Robert Lee HENRY et al., Appellees.

Court of Appeals of Kentucky.

Nov. 4, 1960.

James U. Smith, Jr., Louis E. Woolery, Louisville, for appellant.

Roger E. Vincent, Louisville, for appellees.

MILLIKEN, Judge.

This is an appeal from a judgment awarding custody of a young child to a couple who wanted to adopt it. It is a sequel to Higgason v. Henry, Ky., 313 S.W.2d 275, wherein this Court reversed a judgment for adoption because the Consent to Adoption was not notarized as required by law.

The appellant, Marian O. Higgason, twice married and twice divorced, is the mother of the little girl born out of wedlock whose custody she now seeks to regain from the appellees, the Henrys, who had brought the child back from California with the consent of the mother for the purpose of adoption. The mother had signed a consent therefor, but the consent had not been properly notarized.

The arrangement for the transfer of custody and adoption had been made through a California physician, Dr. John C. Miller, formerly a resident of Louisville and a friend of the Henrys and Mrs. Henry's parents. When the mother of the child realized she was pregnant, she consulted Dr. Miller in California in March of 1955 in the hope that something could be done to relieve her of her pregnancy in order to keep her friends and family from knowing her condition. Dr. Miller is an ethical physician and warned his patient that her pregnancy was too far along for an abortion to be performed upon her by anyone without great risk to herself. He did not see his patient again until July, 1955, when she came to him for a prenatal examination. About this time Dr. Miller came back to Louisville because of a death in the family, and while in Kentucky saw the Henrys who were childless

at the time after several years of marriage. The question of adoption came up and, thinking of his patient, Mrs. Higgason, and her expressed desire to place the child for adoption, he told the Henrys that he might be able to help them. Shortly after his return to California, Dr. Miller attended Mrs. Higgason at the birth of the child. She spent two days in the hospital, where she left the child, and went home to her apartment for ten or twelve days of postnatal care. Nine days after the birth of the child, Dr. Miller went to his patient's apartment for the dual purpose of checking her postnatal condition—she had had some trouble—and of securing her signature to the consent for adoption and for medical care of the child. In keeping with his patient's desire for privacy, the doctor called when her ten year old son was not at home. Mrs. Higgason visited the doctor on three occasions in October and November, 1955, for the removal of some small moles on her neck, and did not mention the child. In the meantime, as Mrs. Higgason knew, the Henrys had paid her $234 hospital and medical bills and had gone on back to Kentucky with the child. It was not until February of 1956 that Dr. Miller heard Mrs. Higgason wanted the child back.

About a year after their return from California with the baby, the Henrys were fortunate enough to have a child of their own. For several years the children have been reared together. Without finding Mrs. Higgason an unfit mother, the conscientious chancellor commented in his opinion that "The voice that cries out louder in this case than all the lawyers' citations of legal precedents is that of the child. At this age in this child's life, I fear that suddenly taking the child from the only parents she has known and sending her to the mother to whom she was born out of wedlock in California could be a violent experience for the child * * *," and he found as a fact that the welfare of the child required that she remain with the Henrys.

 We think the chancellor was exactly right in his conclusion. While our

statute, KRS 405.020, does give the blood parents of a child superior rights of custody, this statutory right may be relinquished as it was here and the chancellor may exercise his sound discretion in determining the custody of the child. Lee v. Thomas, 297 Ky. 858, 181 S.W.2d 457; Rose v. Ledford, 306 Ky. 662, 208 S.W.2d 957; Bridwell v. Coomes, Ky., 250 S.W.2d 868, 869. In the latter case we said:

"This (statutory right to parental custody) is referred to as the paramount right of the parent, but where the parent by contract has transferred the custody of the child to another person and subsequently seeks to regain its custody, the parent has the burden of proving that the change will promote the welfare of the child."

In our opinion Mrs. Higgason completely failed to prove that the welfare of the child would be promoted by the transfer of its custody to her, and the judgment awarding the Henrys permanent custody of the child is affirmed.