## Mason v. Williams, et al.

(Decided June 10, 1915.)

### Appeal from Graves Circuit Court.

1. Parent and Child—When Father Entitled to Custody of.—Under
sections 2016 and 2033 of the Kentucky Statutes, the father of an
infant, whose mother is dead, is entitled to the custody of his
infant child.

2. Parent and Child.—One parent has no right to give or will their
infant child to another person, so as to deprive the other parent
of the rights of parentage.

3. Parent and Child—Guardian and Ward.—Under section 2032 of the
Kentucky Statutes, the statutory guardian has the superior right
to the possession, care and management of his ward's estate; but,
under section 2016 of the Kentucky Statutes, the parents have the
right, superior to all others, to the custody, nurture and education
of their infant children.

4. Parent and Child—Estate of Infant—Guardian and Ward.—If, for
any reason, it should become necessary to confide an infant's es-
tate to a guardian, and the custody, nurture and education of the
infant to another, it may be done under section 2016 of the Ken-
tucky Statutes, thus preserving to the parents their superior right
to the custody of their infant children.

HESTER & HESTER for appellant.

ROBBINS & ROBBINS, H. J. MOORMAN and J. E. WARREN
for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Reversing.

In January, 1911, the appellant, B. Mason, married
Eula Lee Williams, the daughter of the appellees, R. P.
and W. P. Williams. Of this marriage a daughter, Imo-
gene Eloise Mason, was born on August 19th, 1912.

Unfortunately, Mason and his wife became estranged,
and separated in March, 1913. Mrs. Mason and her in-
fant child returned to the home of her father.

By a written agreement of separation executed by .Mason and his wife on March 20th, 1913, they first settled their property rights, and then made this further agreement concerning their child:

"It is also further agreed that the said Eula Mason shall have the full, free, and undisturbed care, possession, custody and control of their child, Imogene Eloise Mason, an infant seven months old; but it is understood and agreed that its father, the said B. Mason, shall have the right to visit said child at all reasonable times."

On May 11th, 1913, Mrs. Mason died of tuberculosis. A few hours before her death she verbally consigned the future care and control of her child to its grandmother, Mrs. Williams; and, in addition thereto, she signed and delivered to Mrs. Williams the following paper, or will, as it is called in the record:

"If I should not get well, I want my mother to have my baby. May the 11th, 1913.

"Eula Mason.

"Attest:

"George T. Fuller.

"David Record."

At that time the child was about nine months old, and had, with its mother, been living with its grandparents about two months.

After his wife's death, Mason requested Mr. and Mrs. Williams to give him his child, and upon their declining to do so, he sued out a writ of *habeas corpus* for the possession of his child, before a justice of the peace. Upon the trial the justice awarded the custody of the child to Mason.

On May 28th, 1913, Mr. and Mrs. Williams, grandparents of the child, brought this suit, in equity, and as an ancillary remedy they also sued out a writ of *habeas corpus* before the circuit judge, who, upon the trial, awarded the custody of the child to its grandparents. From that judgment Mason prosecutes this appeal.

On June 7th, 1913, Mason was appointed statutory guardian of his child, by the Graves County Court, and he qualified as is required by law. In his answer Mason relied upon his guardianship in addition to his right of parentage, in support of his claim to his child.

The proof shows that Mason, the father, is 25 years old, well educated, of good habits and morals, and is worth about $2,000.00. He has four married sisters, who

have homes and families of their own; stand well among their neighbors; and are able and willing to help their brother in raising and educating his child. One of Mason's sisters testified that she had taught school six years; had two children of her own; that her husband's farm was four miles from Mayfield, and worth $8,000.00; that it had upon it a good seven-room modern house, with waterworks; that she was willing to take her brother, with his child, into her home, and give them a permanent home; and, that his other sisters were willing to do a like part by him.

The grandmother, Mrs. Williams, is about 50 years old, and in good health, although she and her husband have a large family, and have accumulated very little, if any, property. They are, however, good, substantial people, and stand well in the community for honesty, good behavior and character.

Under these facts, was Mason, the father, or were Mr. and Mrs. Williams, the grandparents, entitled to the custody and possession of the infant, Imogene Eloise Mason?

Under the early English law, as well as under the law of most of the American States, the father's right to the custody of his infant child was regarded as superior to the rights of all others. In many of the earlier cases great injustice was done, both to the mother and to the infant, in applying this rule, and many harsh cases are found in the books.

There has come about, however, in modern times, a great amelioration in the law in this respect, and under the modern rule, the care, protection and welfare of the infant is the first and supreme purpose of the law. But, in carrying out this purpose, the law recognizes the parents' duty, and their consequent right, to the care, custody and education of their child.

Section 2033 of the Kentucky Statutes provides as follows:

"The father of the minor, if living, or if dead, the mother, if suited to the trust, shall be allowed by the court to have the custody, nurture and education of the ward."

That section was, however, modified somewhat by the act of 1910, which is now found in section 2016 of the Kentucky Statutes, and reads as follows:

"That the father and mother shall have the joint custody, nurture and education of their infant child, or children, and in the event of the death of either one of the parents, father or mother, the survivor, if suited to the trust, shall have the custody, nurture and education of such infant child or children, and may, by will, appoint (a) guardian to his or her infant child, or children, during its minority or for any less period, and may appoint the guardianship of the infant's estate to one and the custody, nurture and education of the infant to another, but the father shall be primarily liable for the nurture and education of his infant child, or children."

It will be noticed that the act of 1910 (section 2016, *supra*), takes a forward step by confiding the nurture and education of the infant to the joint custody of its father and mother, and in the event of the death of either of the parents, the survivor, if suited to the trust, shall have the custody, nurture and education of the infant.

It will thus be seen that under these provisions of the statutes, Mason, as the surviving parent, is clearly entitled to the custody of his child, unless the attempted disposition of the child by the mother before her death, as above set forth, had the effect of defeating Mason's right of custody.

For Mason, it is urged that since his wife was only eighteen years of age at the time of her death, the alleged will or gift of the child to her grandparents, could have no effect, even though his wife might have had a right to dispose of the custody of the child by gift during her life, or by an instrument in the nature of a last will and testament.

But, there is no law in this State giving one parent the right to give or will their child to another person so as to deprive the other parent of his or her rights of parentage. We have been cited to no authority which even tends to uphold the validity, or to give any effect whatever to the alleged will of Mrs. Mason, disposing of the custody of her child. In our opinion, it was ineffectual for any purpose, aside from the question of Mrs. Mason's minority. That question was, in effect, disposed of adversely to the claim of the appellees in Stapleton v. Poynter, 111 Ky., 264, 53 L. R. A., 784, 98 Am. St. Rep., 417.

The weight of authority seems to be that, in the absence of a statute giving the right, a contract made by a

parent giving the custody of his child to another, will be held void as against public policy. See Note, 41 L. R. A. (N. S.), 578.

Tillman v. Tillman, 84 S. C., 552, 26 L. R. A. (N. S.), 781, is an instructive case upon this question.

See also Albert v. Perry, 14 N. J. Eq., 540; Weir v. Marley, 99 Mo., 484, 6 L. R. A., 672; Child v. Dodd, 51 Ind., 484; Brook v. Logan, 112 Ind., 183, 2 Am. St. Rep., 177; Wilcox v. Wilcox, 22 Barb., 178, affirmed in 14 N. Y., 575; State ex rel, Lehman v. Martin, 95 Minn., 121; McDowell v. Bonner, 62 Miss., 278; Markwell v. Pereles, 95 Wisc., 406; Swareus v. Swareus, 78 Kans., 682; Ex parte Reynolds, 73 S. C., 296, 114 Am. St. Rep., 86, 6 Ann. Cas., 936; Latham v. Ellis, 116 N. C., 30; VanAuken v. Wieman, 128 Ia., 476; Miller v. Wallace, 76 Ga., 479, 2 Am. St. Rep., 48, holding that a father can regain possession of his infant child, upon *habeas corpus*, where it has been given to grandparents, or other near relatives.

Clearly, therefore, under these explicit provisions of the statutes, the appellant, being the father of Imogene Eloise Mason, and suited to the trust, is entitled to have the custody, nurture and education of his infant child.

Moreover, the appellant, as guardian, would be entitled under section 2032 of the Kentucky Statutes to the custody of his ward as against the claim of the grandparents. That section reads as follows:

"A guardian shall have the custody of his ward, and the possession, care and management of the ward's estate, real and personal, and out of the estate shall provide for the necessary and proper maintenance and education of the ward."

Section 2032, *supra,* and section 2021 of the Kentucky Statutes, the latter being a part of the amendment of 1910, when read together, are but a carrying out of the modern rule, above referred to, by which the welfare of the infant is of prime consideration, and that the father and mother stand equal in their rights before the law as to the custody of their children. The one most suitable for the trust is entitled to be appointed guardian, under section 2021, *supra;* and, when so appointed, is entitled to the custody of the ward under section 2032, *supra.*

It is not to be understood that the rights of the statutory guardian as to the custody of his ward, are supe-

rior to the rights of the parent in that respect, when the guardian is a person other than a parent.

Under section 2032, *supra*, the statutory guardian clearly has the superior right to the possession, care and management of his ward's estate; but, under section 2016, the parents have the right, superior to all others, to the custody, nurture and education of the infant. If, for any reason, it should become necessary to confide the infant's estate to a guardian, and the custody, nurture and education of the infant to another, it may be done under section 2016, *supra*, thus preserving to the parents their superior right to the custody, nurture and education of their infant children.

There is little difficulty, therefore, in determining this case, since Mason is not only entitled to the custody of his child under section 2032, *supra*, as guardian, but also under section 2033, as her father.

It follows, therefore, that the chancellor erred in giving the custody of the appellant's infant daughter to her grandparents; he should have awarded her to the custody of her father, the appellant.

Judgment reversed, with instructions to the chancellor to enter a judgment as above indicated.