## Gilliam v. Gilliam et al.

March 5, 1943.

Hiram H. Owens for appellant.

J. D. Tuggle and Sampson Knuckles for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Thomas G. Gilliam died intestate and childless while a resident of Knox county on October 2, 1940. He left surviving him his widow, the appellant and plaintiff below, Carrie Gilliam, and four brothers and one sister, who are the defendants and appellees here. At the time of his death he and his surviving wife jointly owned in equal parts the farm in Knox county upon which they resided, which it is alleged contained 200 acres of more or less rough mountain land, portions of which were

underlaid with mineable coal seams and possibly gas deposits—evidence of the latter being only the discovery of gas on other tracts in the vicinity. A survey of the land made during the course of this litigation developed that the tract contained 226 acres and 76 rods instead of the reputed 200 acres as alleged in the petition.

On May 20, 1941, the surviving widow, appellant Carrie Gilliam, filed this equity action in the Knox circuit court against her husband's four brothers and only sister, wherein she sought a division in kind of the jointly owned farm, one-half in value to her, and the other half jointly to defendants. Her petition also sought allotment of dower in her husband's one-half interest in the land, and that her part be laid off so as to include the residence of the couple. The latter was a two-story building containing nine rooms, and surrounding it were some other out-buildings, including a barn and a garage equipped with some living rooms. A public highway intersected the farm in its north portion, the garage and the rooms connected with it being located immediately upon it. The residence was built some twenty-eight years ago and was considerably out of repair, as was also true of appurtenant buildings.

Defendants contested in their answer the divisibility of the farm in kind without material injury to each divided portion, and asked for a sale of the land and division of the proceeds among the respective owners in the ratio of their individual interests. Two volumes of testimony were taken by depositions on the issue of divisibility as prayed for by plantiff—after which that issue was submitted to a special judge, who held that the farm could be divided in kind as insisted on by plaintiff, the widow. That determination was followed by the appointment of commissioners to make the division, one of whom was the county surveyor, who made a survey of the farm according to the calls in the muniments of title, and made a plat thereof which he filed as a part of his testimony. The other two commissioners did not agree as to the location of the dividing line, which disagreement was followed by their resignations. Their substitute appointees did agree, and the plat made and filed by the surveyor shows the location of the dividing line—the allotment of the commissioners being 86 acres and 79 rods to the widowed plaintiff, and 139 acres and 58 rods jointly to the collateral heirs.

Both sides filed exceptions to the report, which were tried before the regular judge of the court upon parol testimony heard and transcribed by the court's stenographer, a copy of which is made a part of the record by a bill of exceptions. It consists of 138 typewritten pages. After the evidence was heard the presiding judge personally visited and inspected the premises, which fact is recited in the judgment and admitted by respective counsel. He then overruled both parties' exceptions and confirmed the commissioners' report, from which judgment plaintiff prosecuted this appeal, and defendants moved and were granted a cross appeal from the court's ruling on the exceptions to the commissioners' report, and also from the judgment of the special judge sustaining the right of division in kind and rejecting their prayer for a sale of the premises and a division of the proceeds. Before judgment was rendered on the exceptions plaintiff filed renunciation of her claim of dower in and to the joint interest of her husband and consented that the division might be made with that claim eliminated from the case.

It will thus be seen that the extensive legal battle at best was waged over a more or less small stake. The exceptions to the commissioners' report were, of course, based upon the contention of respective contestants that they were discriminated against and were not allotted their proportionate part of the entire tract according to value of the whole, and it was to those issues that the testimony heard by the special judge was directed. Each party introduced witnesses of practically equal number to sustain their respective contentions—the widow claiming that the allotment to her was of less value than one-half of the value of the entire tract; whilst defendants not only denied that contention, but also insisted by their exceptions that they were likewise discriminated against for a like reason. The relinquishment of appellant's claim to dower in her husband's half interest in the tract was, as we gather from the record, to strengthen her desire to be allotted the residence on the jointly owned land for her future occupation, and which—in morals at least—would entitle her to a corresponding advantage in the division of the tract wherein she was allotted the residence and appurtenances. Each side contends that the bottoms or valleys on the farm—furnishing the only first class agricultural land—were un-

·equally divided, and the same contention is made by both sides to the litigation with respect to the timber on the land. Arguments are also directed to an inequality of division of the possible working seams of coal and gas underlying the land; but those contentions—with reference to possible underlying minerals—are purely speculative and have no substantial foundation. The bottom land was divided by the commissioners in about, if not the precise, ratio of the entire allotted acreage between the respective owners, and attention appears to have been given by the commissioners to the allotment of growing timber to each of the parties; but, as stated, each of them contends that they did not receive their just proportion of either bottom land or growing timber upon the tract.

More or less persuasive arguments are made by attorneys for each side in behalf of their clients in support of their respective contentions with reference to the disputed issues, and the testimony is so contradictory with reference thereto that if we were called upon to determine them solely upon the testimony contained in the record we would find ourselves in an embarrassing dilemma comparable to the situation of a hung jury. The court, no doubt, knew the witnesses, some of whom resided in Barbourville, where he also resides; whilst the others lived only some five or six miles therefrom in the vicinity of the divided land—thus enabling him to weigh and ·consider the testimony of each witness far more efficiently than we are able to do from the record alone. In .addition thereto, he personally viewed the premises and thereby obtained first hand information as to the material and pertinent facts, which of itself furnishes more or less potent aid to a proper determination of the issues in this character of case.

The undeviating rule, followed by this and other appellate courts, is that findings of facts by a chancellor will not be disturbed or set aside, unless the reviewing court entertains more than a doubt as to the correctness of such findings. There can scarcely be presented a case for the application of that rule any more so than the instant one, and which statement applies to both judgments under review—i. e., the one determining the divisibility of the tract of land made by the special judge and questioned on the cross appeal—and the one disposing of the exceptions of both parties to the com-

missioners' report. Both of the divided parcels border on the public road—thus forming an outlet to each of them, and the testimony on the disputed items of value is so contradictory as that the personal inspection made by the chancellor might well have resolved any doubts he may have had in reaching his conclusions.

Following the rule supra—which for the reasons stated is preeminently applicable in this case—we are unable to discern any substantial reason for disturbing either of the judgments appealed from, and because of which they are affirmed on both the appeal and cross appeal.