## Lewis et al. v. Lewis et al.

Aug. 3, 1943.

Thomas Burchett for appellants.

David Browning for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This habeas corpus proceeding—filed in the Boyd Circuit Court by appellees and petitioners below against appellants and respondents below—seeks to determine the question as to which litigants are entitled to the custody and possession of James E. Lewis, an infant male child of petitioners, about 18 months old. Appellants claimed the right to his custody under an alleged parol agreement made with them by his mother some three weeks after his birth in April, 1941. Appellees admit that at the time indicated the infant's custody was turned over by its mother alone to Sarah Lewis, one of the respondents, but that under the agreement by which that was done the custody was not to be permanent, but only temporary and for such a time as petitioners desired to terminate it. On the other hand, respondents pleaded in their response that the agreement by which they obtained the custody of the child was absolute and permanent, to be followed by petitioners agreeing that respondents might adopt the child if they concluded to do so following the first two weeks of its custody by them, and that after the expiration of that period they declined to submit thereto and refused to permit respondents to adopt the infant as they insisted was the agreement. The trial court adjudged the custody of the infant to his parents, the appellees, and from that judgment respondents prosecute this appeal.

There is no confusion nor contrariety in the law arising from the testimony heard at the trial. Everyone concedes that, both under statutory and divine law, parents have the superior right to the custody and rearing of their offspring, but in obedience to the best interests of society there has been injected into the law another

element largely entering into the determination of such questions, and which is that the welfare and interest of the infant looms largely in the determination of the question. Our statute so providing is section 2016, 1936 edition of Carroll's Statutes, and section 405.020 KRS. The appeal is prosecuted by filing in this court the original papers in the cause, which is permitted by section 429-1 of the supplement to the Criminal Code relating to habeas corpus proceedings (which is chapter 93, page 375 of the session acts of 1940), but there is no statement of appeal filed nor was there any bill of exceptions prepared, nor any order of court filing the bill of evidence heard at the trial. However, no objections to such omissions are made in this court by appellees. We will, therefore, determine the case on the merits waiving such omissions and treating the record as being complete in all respects.

The mother of the involved infant was formerly married to one Castle by whom she had some three or four children. Prior to 1940 she filed her divorce action against her husband and in due time she was granted a divorce and the custody of her children, but the judgment so determining was not put upon the records of the court at that time awaiting the payment of the costs of the action. The plaintiff in that action believing that she was completely divorced from her former husband— married George Lewis, her present husband, who then had and now has a paying employment with some brick company in Ashland. In the meantime Mrs. George Lewis, nee Castle, had procured employment with a restaurant in Ashland run by a lady by the name of Odom which she continued to fill after her marriage with George Lewis. When it became evident that she was soon to become a mother, as a result of that marriage, she suspended work at her employment until the birth of her prospective child and her recovery therefrom.

Some of her Castle children were then temporarily residing with their relatives and the married couple ceased to keep house and boarded with a sister of Mrs. George Lewis where her child, the involved infant, was born. Desiring to hold her job at the restaurant, she expressed a willingness to turn over the temporary possession and custody of her infant child to someone who would willingly look after it. Appellants (who are not

related to appellees) lived some two blocks distant and they had no children although appellant, Sarah Lewis, was a great lover of children and the proof shows that she had the walls of one room of the two room cabin in which she and her husband resided pasted with photographs of infant children. Because of some physical trouble it was known that Mrs. Sarah Lewis would never bear children and to gratify her desire to be with and handle one she consented to take possession of the two or three weeks old infant. The terms under which that arrangement was made constitutes the only disputed fact in the case and is the sole one upon which the litigation turns.

The mother of the infant as well as her husband (though he was not personally present when the arrangement was made) testified that the delivery of the possession of the infant to Sarah Lewis was only temporary subject to recall at any time; whilst Sarah Lewis and her husband contend that it was permanent as hereinbefore stated. Four persons were present at the time of the transaction resulting in the delivery of the child to Sarah Lewis, two of whom were herself and the mother of the infant. The latter's sister was present and another witness who testified for appellants. Each side therefore had two witnesses supporting their respective contentions, but there are facts and circumstances in the case supporting rather than militating against, the contention of appellees as to the terms of the transaction resulting in appellants gaining possession of the infant. The testimony of petitioners was that they furnished milk, medicine and clothing for the infant during the time appellants had custody of it (about 15 or 16 months) whilst the testimony of appellants contradicted in part such claims, they contending that they furnished the greater part of such necessities. But however that may be, the arrangement remained amicable until some time after obtaining possession of the infant Mrs. Sarah Lewis, its alleged foster mother, proposed to take it out of the state to the city of Baltimore, Maryland, where her husband had obtained some sort of employment and whom she visited for some three months with the infant in her possession. She had previously applied to the mother of the infant for permission to carry the infant with her to Baltimore but that request was emphatically refused. Nevertheless, Sarah Lewis clandestinely departed on the

trip with the infant, and she instructed those who knew of her departure not to so inform the mother of the infant. After that the mother wrote protesting letters and requested the return of her infant child to Kentucky but she received no answer. Her attorney then wrote a letter to Sarah Lewis followed by her and her husband's return on a visit to Ashland with the infant, which they took with them to the restaurant where the mother was employed. While holding it in her arms the mother informed appellants that she intended to keep it and to reclaim her right to his custody pursuant to what she contended was the original agreement. Thereupon John Lewis forcibly took the child from her and he and his wife then departed carrying the infant with them. This action was then immediately filed.

The proof furthermore shows that Sarah and John Lewis own comparatively no property, living in a cheap cabin residence with only one sleeping bed for the couple and a baby bed for the infant, which latter its mother says she furnished. The only means of support is the salary earned by the husband alone who prior to obtaining employment in Baltimore worked for the WPA. Neither do the appellees own a residence but live in rented premises. However, each of them receive compensation from what appears to be (and is stated to be in the evidence) permanent employment. Their income therefore is no doubt considerably larger than that of appellants. No attack is made on the moral character of the mother of the infant, nor that of her husband, and their fitness to care for the infant child is neither denied nor otherwise questioned.

This case is somewhat different from the usual one of its kind reaching this court, in that respondents (appellants) are total strangers in blood to the infant child whose custody is in dispute. Most generally such controversies arise between parents when divorced, parents and grandparents and sometimes statutory guardians become parties to such controversies, but here there is neither blood relationship nor fiduciary relationship involved. If the infant should remain with appellants and they should continue to obtain employment by which they and it could be supported, it would then be reared in a lonely atmosphere for the want of child associates. On the other hand, if its custody should be given to its parents it will have the benefit of being reared with its

half brothers and sisters which experience teaches is quite an important factor in the proper rearing of children.

Strengthening and fortifying the correctness of petitioners' theory of the agreement as expressly testified to, are some proven circumstances, most of which are admitted by respondents. Three of which are, (1) the fact that Mrs. Sarah Lewis sought the consent of the mother of the child to carry it to Baltimore which was entirely unnecessary if respondents' theory of the agreement was the true one; (2) it was in proof that Mrs. Sarah Lewis had unsuccessfully sought to obtain the custody of another infant in the same manner prior to the transaction here involved, and (3) witnesses testified that she stated as a reason why she wanted the custody of the infant was for the effect it might have in keeping her husband from being drafted in war services.

The law permits parents by parol agreement to permanently relinquish the custody of their children to others (see Bridges v. Matthews, 276 Ky. 59, 122 S. W. (2d) 1021), but before such an alleged agreement will be sustained and enforced by the courts the testimony substantiating the agreement must be clear and convincing. The trial court determined in this case that such rule had not been met by the proof adduced, in which we concur, in adherence to various cases determined by us as listed in key 2 (3) of Vol. 15 of West's Kentucky Digest under the heading of "Parent and Child." Later cases appear in supplement to that volume and we will not encumber this opinion by listing them herein. A reading of them (one of which is the Bridges case, supra) clearly demonstrates that the judgment of the trial court was correct. Wherefore it is affirmed.