## Fraze v. Grundy et ux.

Aug. 24, 1945.

614

Arthur Iler for appellant.

T. J. Sparks for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On July 20, 1945, Grundy and wife, filed petition seeking to hold the custody of Luther Fraze, 7 year old son of appellant. They alleged that they were entitled to the lawful custody, and appellant was unlawfully claiming possession, and asked the Court to issue habeas corpus writ. Their right was based on an executed contract of November 10, 1941, by which Fraze surrendered the infant (then about 3 years old) to appellees; they "to have and keep him as their own son; to educate and pay all expenses and upkeep." It was provided that appellees were to "bring the child to visit party of the first part as often as once every twelve months." A response merely alleged that appellant was the father of the boy, the only living parent, and that as such he was entitled to the custody, his right being superior to those who laid claim. Upon a hearing the Court adjudged plaintiffs entitled to the custody and control of the infant. From that ruling the father appeals. Section 429-1, Criminal Code, 1944 Supp.

We shall first dispose of technical grounds urged for reversal. It is argued that the Court erred in overruling general demurrer to the petition, setting out (in brief) several claimed defects; the principal and perhaps the only one to be noted being that the pleading failed to show that appellees had a right to the boy's custody. A reading of the petition shows that the appellees based their right on the contract and fulfillment of its terms. It is true that they did not allege that they had complied with the part which provided for annual visits, but this was more a matter of avoidance, and as we observe appel-

lant did not rely on the breach of contract, nor claim that appellees were not proper persons to have the custody of the child, or that the child was not being well cared for. As we view the record, we do not find notation of the filing of, or the Court's ruling on, general demurrer. However, we conclude that the petition was sufficient to withstand an attack by demurrer. Appellees alleged the contract and compliance; that they were entitled to custody, and that he was being unlawfully restrained by appellant; there was a prima facie showing of facts upon which the Court could determine the issue. There is nothing in Rosenberg v. Green, 300 Ky. 91, 187 S. W. 2d 1013, which warrants the suggestion that the petition was defective; in that case there was total failure of plaintiff to show right to the custody of the child involved. Mason v. Williams, 165 Ky. 331, 176 S. W. 1171, and cases following it may be readily distinguished.

The record before us fails to show the filing of a special demurrer, which is said in brief should have been sustained because the County Court was without jurisdiction. In a writing which entered the appearance of appellant, it was stated that the entry was for the sole purpose of ''this motion,'' which we assume was a motion to dismiss for want of jurisdiction. The rule is that when the defect claimed is not shown on the face of the petition, objection should be by plea. White v. Crouch, 280 Ky. 637, 138 S. W. 2d 753. Assuming that the special demurrer was filed and overruled the County Court is by Section 399, subd. 2, Criminal Code, vested with jurisdiction in habeas corpus cases, under circumstances set out in the section supra. It was incumbent upon the one challenging jurisdiction to produce proof which might show lack. Commonwealth v. Carmackle, 192 Ky. 171, 232 S. W. 644. Cited in Bard v. Bard, 295 Ky. 254, 173 S. W. 2d 569.

A brief statement of the facts, which are in the main not disputed, shows that the mother of the boy died in September 1938, about one month after his birth. At this time appellant was farming; with four other children, two of the younger ill at the time, he found himself in a grievous situation. He made temporary arrangement for the care of the baby which lasted briefly, and appellant was told by the temporary custodian that he should make other arrangements. At this point appellees came

forward and agreed to take the child, as they say, at appellant's request, and keep it for two weeks. When this time was up, they had become attached to the child and were allowed to keep it. Later in February of 1939, when the child was about 6 months old, Mrs. Grundy informed appellant that she and her husband were going to move to Michigan, and he agreed (without terms) that they should take the child. Appellant rather intimates that the child was taken without his consent. However this may be, the fact that he makes no effort to show that he sought its return between February 1939, and the date of the contract, November 1941 shows a lack of parental interest, and the execution of the contract manifests lack of opposition to the child being taken to Michigan in appellees' custody.

Unlike many cases of this character we have had before us, there is a striking absence of any sort of ill feeling between the parties. Summarized, the testimony shows that the appellees are substantial people, amply able to care for the boy, to whom they have become strongly attached. They have provided for him, given him a good home, and have started him on the educational road. It is stated that the boy will be amply provided for upon their deaths. It is fair to say that appellant showed that he was able to care for the boy in a good home, though with less of this world's goods and more responsibilities, he might not be able to afford him the same standard of living. The minor intimations that the boy was not being properly cared for at either home are not forceful, and appellant shows no reason for his care being more suitable, except that the appellees were not in the best of health, subject perhaps to some minor heart ailment. These matters, which we take into consideration in looking to the interests of the infant, may be classified as a set-off. This consideration includes the matter of the child's health, and we gather from the proof that the alleged unhealthy condition temporarily existing was due to causes quite natural to children. The soreness in the mouth and disturbed stomach were shown to be due to the cutting of second teeth, and not, as one Doctor says, the result of malnutrition. Summing up, it is not difficult to conclude that the boy's welfare would be best conserved in the custody of appellees.

It is noted above that appellant, in response, relied

on the fact that he was the father, the only living parent, hence, under the law entitled to his custody. There was no denial of the contract, nor was there intimation of its having been entered into under circumstances which would have warranted attack. Aside from the claim of legal custody under KRS 405.020, in avoidance of the admitted contract, appellant's contention is that appellees in failing to comply with that portion providing for visitation had violated it in such a way as to authorize him to declare it voided.

The contention as to legal (statutory) custody would be of force and effect if it were not for the contract. Minus the contract, the statute leaves little discretion in the matter of custody of infants. But we have held (contrary to the holdings of Courts of other jurisdictions) that such a contract as is here exhibited, is not contrary to public policy. Thompson v. Childers, 231 Ky. 179, 21 S. W. 2d 247. In that case we cited Ellis v. Jesup, 11 Bush 403, 74 Ky. 403, pointing out the reason for the rule favoring the parent, particularly the father, but we wrote [231 Ky. 179, 21 S. W. 2d 250], "if a father desires to make a contract whereby his children may receive these advantages, and he be relieved, at least in part, of the burden of their support, there is no good reason why the contract should not be enforced. * * * As long as the person to whom the custody has been surrendered faithfully performs the duties which the father should have performed, good conscience demands that he be estopped from repudiating his agreement to the distress of those having the custody of the children, and the children themselves." The principle is recognized in Bridges v. Matthews, 276 Ky. 59, 122 S. W. 2d 1021; and Lewis v. Lewis, 295 Ky. 258, 174 S. W. 2d 294.

The contention of appellant that he was entitled to declare the contract voided because appellees had violated the visitation provision, though not relied on in response, would be of more force if the record showed more of a fatherly devotion to the boy, and he, seeking equitable relief, had made effort to do equity. The record is not clear just how many times the boy was taken to the father's home after the contract of November 1941. It appears from appellant's testimony that appellees brought the boy home sometime in 1942. The next time was in June of 1945. In the interims, as is admitted by

the father, he did not contribute a penny to the child's support; he sent him no birthday presents, though he says he could not get appellees' address. It was not until some undisclosed date in the early part of 1945 that appellant "concluded to exercise his right" and had caused counsel to write to appellees calling attention to the agreement, and said "unless you can bring him home for a visit it will be necessary to take legal steps to take the child and terminate this agreement." Soon after this letter appellees did bring the child on a visit, and when they sought to take the boy, appellant refused to give him up and this proceeding followed.

While a habcas corpus proceeding, this issue is one of equitable principles; appellees stand on the contract, and its performance, and appellant (by proof only) on an alleged breach. We have shown that the contract is valid and enforceable. On the other question, it is clear that the father seeking equity did not make effort to do equity. The matter is primarily for the trial court, and we are not justified in disturbing the finding unless entertaining more than a doubt as to its correctness. Gilliam v. Gilliam, 293 Ky. 772, 170 S. W. 2d 343. Here the trial judge may well have, and as we think correctly, concluded under the proof that the reasons given for failing to make the visit in the interim were sound. Illness of one of the foster parents at one time, impossibility of travel, and the engagement of appellees at one time in war work would reasonably stand in the way of making the long trips, and during the interim appellant does not show that he was greatly disturbed by the failure. The trial Court saw and heard the parties and their witnesses. The boy was in Court, under the observation of the Court, but because of objection by appellant, was not questioned. On the whole record, we conclude that the Court correctly overruled appellant's motion to dismiss at the close of plaintiff's evidence, and in finally awarding custody to appellees.

Judgment affirmed.